[Civ. No. 52289. Second Dist., Div. Two. Feb. 15, 1978.]

A. DOUGLAS HENDERSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
ROSEMARY G. HENDERSON, Real Party in Interest.

COUNSEL

Max Fink and Rodney T. Lewin for Petitioner.

No appearance for Respondent.

Richard N. Piantadosi for Real Party in Interest.

OPINION

FLEMING, Acting P. J.—The trial court denied defendant A. Douglas Henderson's motions to quash service of summons on him in Florida for lack of jurisdiction and to dismiss plaintiff Rosemary G. Lepera's action against him in California for inconvenience of forum. We issued an alternative writ of mandate.

FACTS

The motion papers (verified petition, verified complaint, and exhibits) show that defendant Henderson first met plaintiff Lepera in Florida in the latter part of 1971. Henderson, then 26 years old and a domiciliary and resident of Florida, possessed substantial inherited wealth. Lepera then 32 years old, married, and the mother of two children, worked as a

hostess in a restaurant owned by Henderson. In January 1972 Henderson and Lepera began a personal liaison which continued until August or December 1976. Lepera divorced her husband in June 1973, and although Henderson never married her or adopted her children, she, apparently without demur from Henderson, called herself Rosemary G. Henderson. The two lived together and held themselves out as husband and wife. Both were interested in horse racing, and plaintiff's complaint asserts that 12 acres of property were purchased in Parkland, Pompano Beach, Florida, for the stabling and training of race horses. Additional property for training and racing horses was purchased at Ocala, Florida, and, according to the complaint, property was also acquired in Vermont.

In plaintiff's verified complaint, filed under the name of Henderson, she alleges that in May 1972 the parties orally agreed they would combine earnings and share equally in any and all property accumulated while they were living together; they would hold themselves out to the general public as husband and wife; Lepera would render services as companion and homemaker; the parties would start and jointly conduct a thoroughbred horse-training and racing business; Henderson would give Lepera $50,000 a year; he would give Lepera's natural parents $400 a month for life; he would support and educate Lepera's two children in a style that would include a full-time governess and separate housing (amounting to $1,500 monthly) and private schooling (unspecified additional cost). According to plaintiff, Henderson made timely payment of these various sums.

The only time the parties were in California together was for two days in San Francisco in the summer of 1973.

Sometime in 1975 plaintiff qualified as a professional horse trainer and began to train race horses. After the relationship of the parties terminated on their separation (in August 1976 according to defendant; in December 1976 according to plaintiff), plaintiff desired to establish a reputation in California as a horse trainer. To enable her to do this defendant sent eleven of his and his mother's horses to California to race under plaintiff as trainer at an annual salary of $50,000. Plaintiff arrived in California in January 1977, and raced these horses in meets at Santa Anita, Hollywood Park, and Del Mar. On June 30 defendant terminated plaintiff's salary and undertook to compensate her as an independent contractor on the basis of $30 per horse per day plus a percentage of the horses' winnings. On July 20 plaintiff filed her complaint, which, in reliance upon the doctrine set out in *Marvin* v. *Marvin* (1977) 18 Cal.3d

660 [134 Cal.Rptr. 815, 557 P.2d 106], sought compensation for her "equitable interest" in the Florida properties, the Vermont property, the horses, and the horse-racing business; payment of $50,000 a year for life; lifetime support for her two parents; support and education for her two children; payment of $1 million for services rendered; interest on $1 million at 7 percent from May 1972; and other unspecified relief. At the time of filing her complaint plaintiff also applied for an order to show cause (marriage), which sought an injunction against defendant's removing his horses from California, spousal support of $7,500 monthly, attorneys fees of $20,000, and court costs of $5,000. Both in her complaint and her application for spousal support plaintiff asserted that her previously paid salary of $50,000 for training and racing horses was a sham and was in fact money provided her under the oral agreement for her maintenance and personal support.

Defendant was served with the complaint in Florida, apparently under the theory he was doing business in California. Thereafter he entered a special appearance to make these motions.

DISCUSSION

The petition presents two issues: the validity of jurisdiction obtained by personal service outside the state on this nonresident defendant; and the convenience of a California forum for the litigation of the cause of action set out in the complaint.

■ Exercise of authority by California courts over events occurring and persons located outside the state is controlled by two companion principles: first, the long-arm statutes for service of process can, in appropriate cases, require a nonresident defendant served with process outside the state to respond to suit in California—when the cause of action relates to defendant's activities in California, when California can provide a convenient forum, and when the state has an interest in protecting the welfare of its citizens in relation to the subject matter. (Code Civ. Proc., §§ 410.10, 415.40.) Second, the principle of inconvenient forum tempers the exercise of long-arm jurisdiction by authorizing the dismissal or stay of an action filed in California—when it possesses no substantial connection with defendant's activities in California, when California cannot provide an adequate forum, and when California has no interest in fostering the litigation. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143 [127 Cal.Rptr. 352, 545 P.2d 264].) The principle of inconvenient forum is codified in Code of Civil Procedure, section

410.30: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." When the forum is found inconvenient, the ordinary remedy in a cause involving a bona fide California resident is to stay rather than dismiss the action. (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853 [126 Cal.Rptr. 811, 544 P.2d 947].)

With the foregoing principles in mind we examine the facts at bench to determine the appropriate disposition of defendant's motions. On both motions we think defendant has the better of the argument.

I

Preliminarily, we note that plaintiff's cause of action does not arise out of defendant's horse-racing activity in California, but relates in its entirety to an agreement made, activities performed, obligations incurred, and services rendered as companion and homemaker during an extramarital and nonmarital relationship that took place in Florida. The parties agree that cohabitation ceased sometime in 1976 prior to plaintiff's removal to California in January 1977.

All pleaded counts clearly refer to an agreement made, activities performed, obligations incurred, and services rendered in Florida prior to plaintiff's departure for California, except the fifth count (a common count for $1 million), which refers to labor and services rendered by plaintiff to defendant within four years last past. Considered in isolation, this count might suggest that part of the services for which $1 million is claimed had been rendered in California during the six months that preceded the filing of the complaint in July 1977. However, the services that form the basis for the common count are from other parts of the complaint readily identifiable as nonmarital services rendered in Florida prior to the parties' separation in 1976 and prior to plaintiff's removal to California in 1977. Although the fifth count on its face purports to claim compensation for labor and services rendered up to the filing of the complaint, from the facts pleaded in other counts and from the relief sought in the verified order to show cause (marriage) it clearly appears that the services referred to are those involved in nonmarital cohabitation as companion and homemaker, services that terminated sometime during 1976. The common count must be read in the light of the more specific facts asserted in other counts and in the order to show cause

(marriage), and the specific facts set out in plaintiff's complaint take precedence over inconsistent general conclusions pleaded in the complaint. ■ It is well-established under California procedure that specific pleading controls, limits, and supersedes general pleading found in the same or a prior complaint. (*Orloff* v. *Metropolitan Trust Co.* (1941) 17 Cal.2d 484, 489 [110 P.2d 396]; *Hays* v. *Temple* (1937) 23 Cal.App.2d 690, 695 [73 P.2d 1248]; *Harris* v. *Kessler* (1932) 124 Cal.App. 299, 303 [12 P.2d 467]; *Neal* v. *Bank of America* (1949) 93 Cal.App.2d 678, 682 [209 P.2d 825]; Witkin, Cal. Procedure (2d ed. 1971) pp. 2095-2097.) The subject matter of the complaint is identifiable as a nonmarital agreement and relationship initiated in Florida, between Florida residents, for services performed in Florida, involving Florida property, and which terminated in Florida. All rights and liabilities arising out of the nonmarital agreement and its related activities became fixed and vested in 1976 at the time of its termination. Only thereafter did plaintiff take up residence in California. Her status is that of one who seeks to enforce a nonmarital claim against a nonresident defendant for services rendered outside California under an agreement which terminated before her move to California.

■ Jurisdiction over a nonresident defendant served with process outside the state is classified as either general or limited. *General jurisdiction* over a nonresident defendant exists when his activities within this state are extensive, wide-ranging, substantial, continuous, and systematic. (*Cornelison* v. *Chaney* (1976) 16 Cal.3d 143, 147 [127 Cal.Rptr. 352, 545 P.2d 264], and cases there cited.) ■ At bench, defendant's activity within the state bears no resemblance to the wide-ranging and systematic activity that constitutes the basis for general jurisdiction. His horses, handled by plaintiff, raced at several meets in California—and that is all. Defendant never came near the state. For purposes of general jurisdiction his connection with California is even more tenuous than that of the trucker in *Cornelison,* who hauled goods to California on business 20 times a year but whose activities in California were held insufficient to subject him to the state's general jurisdiction to adjudicate matters regardless of the relevance of defendant's activities to the cause of action asserted against him. Under the facts established at bench, California has no general jurisdiction over defendant.

■ However, *limited jurisdiction* over a nonresident defendant may arise when a substantial nexus exists between plaintiff's cause of action and defendant's activities within the state. When such a connection is found, California courts acquire a limited jurisdiction over a nonresident

defendant for the purpose of adjudicating the particular cause of action pleaded. With respect to limited jurisdiction the court in *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 148 [127 Cal.Rptr. 352, 545 P.2d 264], said: "In such a situation, the cause of action must arise out of an act done or transaction consummated in the forum, or defendant must perform some other act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws. Thus, as the relationship of the defendant with the state seeking to exercise jurisdiction over him grows more tenuous, the scope of jurisdiction also retracts, and fairness is assured by limiting the circumstances under which the plaintiff can compel him to appear and defend. The crucial inquiry concerns the character of defendant's activity in the forum, whether the cause of action arises out of or has a substantial connection with that activity, and upon the balancing of the convenience of the parties and the interests of the state in assuming jurisdiction."

Limited jurisdiction depends upon an evaluation of three considerations: "(1) whether the cause of action 'arises from' or is otherwise 'connected with' defendant's forum-related activities (*Buckeye Boiler Co. v. Superior Court*, 71 Cal.2d 893, 899 [80 Cal.Rptr. 113, 458 P.2d 57]); (2) the relative burdens upon the parties of trying the action in the forum state (*Travelers Health Assn. v. Virginia*, 339 U.S. 643, 649 [94 L.Ed. 1154, 1161-1162, 70 S.Ct. 927]); and (3) the interest of the forum state in assuming jurisdiction (*McGee v. International Life Ins. Co.*, 355 U.S. 220, 223 [2 L.Ed.2d 223, 226, 78 S.Ct. 199])." (*Cornelison, supra*, p. 152, dis. opn.)

The complaint and order to show cause (marriage) make it clear that plaintiff has pleaded a nonmarital claim based on a promise to pay money and share property in return for plaintiff's services during cohabitation as companion and homemaker. Not later than December 1976 defendant terminated this arrangement, says plaintiff, and at that time her rights under the agreement became fixed and vested. Plaintiff's cause of action for breach of an express or implied promise rests on a contract made in Florida, performed in Florida, and terminated in Florida. We must inquire whether for purposes of limited jurisdiction sufficient connection exists between defendant's horse-racing activity in California and plaintiff's nonmarital claim for services rendered. We evaluate the sufficiency of connection by analyzing three factors, the relation of plaintiff's cause of action to defendant's activity in the forum,

the balance of convenience of the parties, and the interest of the State of California in assuming jurisdiction.

1. We have previously pointed out the lack of any essential connection between plaintiff's cause of action, one based on a sexual relationship akin to marriage which seeks to enforce promises of money and property made during cohabitation, and defendant's activity in racing his and his mother's horses in California after the parties' cohabitation had ended. No claim arising out of the horse-racing activity has been made, such as one for unpaid wages for training horses, for personal injuries suffered on the job, or for breach of a contract to train and race horses. Indeed the connection between defendant's horse-racing activity in California during 1977 and plaintiff's nonmarital claim is attenuated by plaintiff herself, who takes the position that her contract of employment to train horses in California was a sham.

2. With respect to the relative burden on the parties of litigating plaintiff's cause of action in California or in Florida it appears that almost all witnesses except plaintiff will be found in Florida; that the real properties which are the subject of a major part of plaintiff's claim are located in Florida; that evidence in the form of tax returns, title documents filed with public authorities, business records, records of banks and title companies, will be found in Florida; and that the horse-racing business in which plaintiff claims an interest is likewise located in Florida. Since defendant has no property in California, it is evident that any judgment obtained here can only become effective after it has been translated into a Florida judgment.

Finally, under general rules of contract law and of conflict of laws, Florida law, the law of the jurisdiction in which the contract was made and performed, will govern such questions as the enforceability of nonmarital contracts for cohabitation, the statute of limitations, and the statute of frauds. In California a contract is governed by the law and usage of the place where it is to be performed, or, if place of performance is not indicated, by the law and usage of the place where it is made. (Civ. Code, § 1646.) When the application of section 1646 is obscure, California courts are guided by the factors set out in Restatement Second, Conflict of Laws section 188, in determining what law to apply to the contract. Section 188 declares that the rights and duties of the parties to a contract are determined by the law of the state which has the most significant relationships to the transaction and the parties. Factors to be taken into account include,

(a) the place of contracting;

(b) the place of negotiation;

(c) the place of performance;

(d) the location of the subject matter of the contract;

(e) the domicile and residence of the parties.

At bench, we deal with an express contract negotiated and made in Florida, arising out of acts performed mostly in Florida, involving title to land and chattels located mainly in Florida, and entered into between Florida domiciliaries. Florida law, including relevant statutes of limitation, rules of parole evidence, statutes of frauds, and laws affecting the validity and enforceability of express contracts for nonmarital services, clearly applies. (Civ. Code, § 1646; Rest.2d Conf. of Laws, §§ 141, 188, 196, 199, 205, 206.) Insofar as the complaint pleads an implied contract for nonmarital property rights, such rights are governed by the law of the parties' domicile where the rights accrued, which at bench is Florida. (See Horowitz, *The Law of Choice of Law in California—A Restatement* (1974) 21 UCLA L.Rev. 719, 776, fn. 148, and cases there cited, esp. *Emery v. Emery* (1955) 45 Cal.2d 421, 428 [289 P.2d 218].)

3. We discern no California interest advanced by providing a forum for the litigation of plaintiff's complaint, in that the agreement on which plaintiff bases her claim is one made and performed outside California by nonresidents and terminated before either party acquired any contacts with California. Under these circumstances we think California has no interest in vindicating plaintiff's claim or enforcing extramarital and nonmarital agreements made, performed, and terminated by nonresidents outside the state. To the contrary, California has a distinct public interest in not attracting to its borders and drawing into its court system controversies arising out of extramarital and nonmarital affairs carried on and concluded by nonresidents outside the state. Although as a general proposition the State of California may wish to persuade out-of-state business to move to California, the resolution of extramarital shipwrecks which have foundered on the rocks of a foreign shore, does not constitute a desirable form of such business. If a newly arrived claimant in California could initiate an action against a nonresident on the theory of *Marvin v. Marvin* (1976) 18 Cal.3d 660 [134 Cal.Rptr. 815, 557 P.2d 106], for compensation and claims based on prior nonmarital

cohabitation outside California, then California's courts would be thrown wide open to the grossest form of forum shopping, for which the only equipment needed would be a tenuous claim to some California connection, a serviceable carpetbag, and a one-way ticket from New York, London, Paris, or Cannes.

For the foregoing reasons we conclude that the nature and quality of defendant's activity in California is insufficient to confer limited jurisdiction on California courts to entertain plaintiff's claim by process served in Florida on a nonresident defendant. (*Hanson* v. *Denckla* (1958) 357 U.S. 235 [2 L.Ed.2d 1238, 78 S.Ct. 1228]; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222 [1 Cal.Rptr. 1, 347 P.2d 1]; *Star Aviation, Inc.* v. *Superior Court* (1977) 73 Cal.App.3d 807 [141 Cal.Rptr. 13]; *Judd* v. *Superior Court* (1976) 60 Cal.App.3d 38 [131 Cal.Rptr. 246]; *Spokane Eye Clinic, Inc.* v. *Superior Court* (1976) 63 Cal.App.3d 548 [133 Cal.Rptr. 838].)

## II

Nevertheless, it may be argued that the physical presence of defendant's horses in California and his employment of plaintiff to train and race them at California tracks sufficiently link defendant's California horse-racing activity to plaintiff's claim of part ownership in the horses and the horse-racing business, a link which by a process of extension carries with it jurisdiction over plaintiff's more remote claims, such as lifetime support for her two parents—that plaintiff's claim follows the horses, so to speak. But even if we accept that argument and give plaintiff the benefit of a wide-ranging and questionable assumption of jurisdiction by California over a nonresident, plaintiff's attempt to litigate her claim in this state would falter on the ground of inconvenient forum. Convenience or inconvenience of forum involves roughly the same considerations that are relevant to limited jurisdiction over a nonresident defendant served outside the state, viz. (1) the relationship of defendant's forum-related activity to plaintiff's cause of action, (2) the relative burden of litigation on the parties, and (3) the forum state's interest in exercising jurisdiction. (*Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501, 508-509 [91 L.Ed. 1055, 1062-1063, 67 S.Ct. 839]; *Koster* v. *Lumbermens Mutual Co.* (1947) 330 U.S. 518, 521 [91 L.Ed. 1067, 1072, 67 S.Ct. 828]; *Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481, 485 [47 Cal.Rptr. 201, 407 P.2d 1]; *Fisher Governor Co.* v. *Superior Court* (1959) 53 Cal.2d 222, 226 [1 Cal.Rptr. 1, 347 P.2d 1].) (The chief difference

between the theory of limited jurisdiction and that of convenience of forum appears to be the slightly more pragmatic and less conceptual basis on which convenience of forum is determined.) In the application of these factors to the cause at bench, we find that the same considerations that favor Florida jurisdiction likewise favor Florida convenience of forum.

If we adopt the itemization of factors used to determine convenience of forum in *Great Northern Ry. Co. v. Superior Court* (1970) 12 Cal.App.3d 105, 113-115 [9 Cal.Rptr. 461], we find that almost all of them affirmatively favor a Florida forum:

1. The amenability of defendant to personal jurisdiction in the alternative forum. *Affirmative.* The defendant may be readily served in Florida, his residence for over 30 years.

2. The relative convenience to the parties and witnesses of trial in the alternative forum. *Affirmative.* The defendant and almost all witnesses except plaintiff reside in Florida.

3. The differences in conflict of law rules in this state and in the alternative forum. *Neutral.* Neither party claims prejudice under such rules.

4. The principal place of business of the defendant. *Affirmative.* Defendant's horse-racing business is located in Florida.

5. Absence of a substantial relationship to this state of the situation, transaction, or events out of which the action arose. *Affirmative.* The parties' contract was made and performed in Florida; their nonmarital cohabitation began and ended in Florida; the law governing their contract and relationship is that of Florida.

6. Whether any party will be substantially disadvantaged in having to try the action (a) in this state or (b) in the forum in which the moving party asserts it ought to be tried. *Neutral.* It will be inconvenient for either party to litigate 2500 miles from his or her residence.

7. Whether any judgment entered in the action will be unenforceable by process or other enforcement proceedings in this state. *Affirmative.* It will require a Florida judgment to effectuate any judgment rendered in California.

8. Whether witnesses would be inconvenienced if the action were prosecuted in this state rather than in the forum in which the moving party asserts it ought to be prosecuted. *Affirmative.* It would be inconvenient for witnesses to come to California from Florida.

9. The relative expense to the parties of maintaining the action (a) in this state and (b) in the state in which the moving party asserts the action ought to be prosecuted. *Affirmative.* It would be more costly for defendant to defend in and transport witnesses to California than for plaintiff to prosecute her action and transport herself to Florida.

10. Whether a view of premises by the trier of fact will or might be necessary or helpful in deciding the case. *Affirmative.* If visual inspection or appraisal should become an element in the litigation both the real property and the horse-racing business are accessible to inspection in Florida.

11. Whether prosecution of the action will or may place a burden on the courts of this state which is unfair, inequitable, or disproportionate in view of the relationship of the parties and the cause of action to this state. *Affirmative.* California courts are already much occupied with nonmarital claims arising out of activities carried on and agreements made by persons within the state.

12. Whether the parties lack sufficient contacts to this state to obligate them to participate in judicial proceedings here. *Affirmative.* At the time of the contract and services which form the basis of plaintiff's cause of action the parties resided in Florida. Contacts with California prior to the separation of the parties were nil.

13. Lack of any interest of this state in providing a forum for some or all of the parties to the action. *Affirmative.* California has no public interest in providing a forum for the resolution of extramarital and nonmarital agreements made, implemented, and terminated in Florida.

14. Lack of any interest of this state in regulating the situation or conduct involved. *Affirmative.* See answer to 13.

15. The avoidance of multiplicity of actions and inconsistent adjudications. *Affirmative.* Any judgment rendered in California would require a further judgment in Florida, particularly insofar as it might undertake to deal with Florida real property.

16. The relative ease of access to sources of proof. *Affirmative.* Witnesses, evidence, and relevant documents are located in Florida.

17. Availability of compulsory process for attendance of witnesses. *Affirmative.* Witnesses in Florida could be compelled to attend court in Florida.

18. The relative advantages and obstacles to a fair trial. *Affirmative.* A fair trial will be better assured in Florida, where the contract was made and performed and where evidence and witnesses are located.

19. The popular interest in the case. *Neutral.* This factor is irrelevant.

20. Whether administrative difficulties and other inconveniences from crowded calendars and congested courts are more probable in the jurisdiction chosen by plaintiff. *Neutral.* Neither party showed court congestion as a factor in the determination of convenience of forum.

21. Whether jury duty will be imposed upon a community having no relation to the litigation. *Affirmative.* See answer to 13.

22. The injustice to, and burden on, local courts and taxpayers. *Affirmative.* See answer to 13.

23. The difficulties and inconvenience to defendant, the court, and jurors, in receiving testimony by deposition. *Affirmative.* See answers to 2 and 16.

24. Availability of the forum claimed to be more appropriate. *Neutral.* See answer to 20.

25. Other practical considerations that make trial of a case convenient, expeditious, and inexpensive. *Affirmative.* The cause involves a contract made in Florida, performed in Florida, and governed by Florida law; a Florida forum is desirable in order to obtain authoritative interpretation of Florida law.

The sum of these factors makes it apparent that the doctrine of inconvenient forum applies.

A final question on convenience of forum is whether dismissal or stay is the more appropriate remedy in this cause. Ordinarily, dismissal is the

exceptional remedy and stay the usual remedy, so that if obstacles develop to litigation in the convenient forum the litigant may resume litigation in the California forum. (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853 [126 Cal.Rptr. 811, 544 P.2d 947]; *Ferreira* v. *Ferreira* (1973) 9 Cal.3d 824 [109 Cal.Rptr. 80, 512 P.2d 304]; *Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738 [59 Cal.Rptr. 101, 427 P.2d 765].) However, the cases that favor stay over dismissal involved plaintiffs who were bona fide California residents at the time their causes of action arose. In *Archibald* plaintiff was a true California resident when she made the trip to Hawaii that formed the basis for her claim of discrimination against California residents. In *Ferreira,* a child custody case, the dispute involved modification of custody of children who were then physically and lawfully present in California and under the control of a parent who was a California resident and who asserted that the children's health or safety would be jeopardized by their return to the other parent. In *Thomson* the claimant had been a California resident at the time he had insured real property in Texas with defendant insurance companies; and the court emphasized the bona fides of his California residence. In these instances, plaintiffs were California residents at the time their claims arose, and no issues of forum shopping or the bona fides of newly acquired residency ever developed. In contrast, plaintiff at bench had no connection with California at the time her cause of action matured, i.e., on her separation from defendant at the termination of their cohabitation. This cause thus presents an extraordinary and not an ordinary situation, and the factors set out in *Archibald* that favor stay over dismissal do not control. We find the judgment of the court in *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105 [90 Cal.Rptr. 461], persuasive, where in a cause of action for wrongful death arising out of a railroad accident in Spokane, Washington, a California administratrix sought to prosecute an action against the railroad in California. The court found that the sole beneficiary, a resident of Spokane, had no connection with California, and dismissed the action in California on the ground of inconvenient forum. (See also *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577 [268 P.2d 457, 43 A.L.R.2d 756].)

We conclude that even were we to assume the existence of limited jurisdiction in California to prosecute this action against a nonresident defendant—an assumption we affirmatively reject—the action would be most conveniently tried in a Florida forum and the California action should be dismissed.

Let a peremptory writ of mandate issue directing the lower court to vacate its order denying petitioner's motion to quash service for lack of jurisdiction and to vacate its order denying petitioner's motion to dismiss the cause for inconvenience of forum, and to enter a new and different order granting both motions.

Compton, J., and Beach, J., concurred.

The petition of the real party in interest for a hearing by the Supreme Court was denied May 18, 1978. Bird, C. J., Tobriner, J., and Mosk, J., were of the opinion that the petition should be granted.