[No. B006743. Second Dist., Div. Four. Dec. 5, 1984.]

APPALACHIAN INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
UNION CARBIDE CORPORATION, Real Party in Interest.

COUNSEL

Antin, Stern, Litz & Grebow, Arthur Grebow, Edward Gartenberg, Dickstein, Shapiro & Morin, Sidney Dickstein, Michael E. Nannes and Howard M. Schiffman for Petitioner.

No appearance for Respondent.

Kelley, Drye & Warren, Shigeru Watanabe and Bruce L. Ishimatsu for Real Party in Interest.

OPINION

**WOODS, P. J.**—The issue in this case is whether a defendant can raise the doctrine of forum non conveniens after having agreed by contract to submit to the jurisdiction of any court of competent jurisdiction which the plaintiff requests. We hold that the contractual provision does not preclude application of the doctrine of forum non conveniens, which is designed to protect both the interests of the litigants and the public.

In May of 1984, plaintiff/real party in interest Union Carbide Corporation (Union Carbide) filed a complaint for declaratory relief in the Los Angeles

Superior Court regarding the construction and effect of an insurance policy issued to it by defendant/petitioner Appalachian Insurance Company (Appalachian).

Union Carbide is a New York corporation which has its principal place of business in Connecticut and conducts business in California. Appalachian is a Rhode Island corporation, which has its principal place of business in Rhode Island, and also conducts business in California.

According to the complaint, the parties entered into a special risk policy as of 1972, under which Appalachian agreed to provide Union Carbide with insurance for losses in excess of $500,000 per occurrence. A "Service of Suit" clause in that policy stated: "(a) It is agreed that, in the event of the failure of this Company to pay any amount claimed to be due hereunder, this Company, at the request of the Insured, will submit to the jurisdiction of any court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court.

"(b) In any suit instituted against it upon this contract, this Company will abide by the final decision of such court or any appellate court in the event of an appeal.

"(c) Service of process in any such suit may be made: (1) upon the Company at its home office in Providence, Rhode Island; or (2) provided the Insured shall first notify this Company of its intention to sue, upon the highest officer having supervision of insurance (normally bearing a title such as Commissioner, Superintendent or Director of Insurance) in any State in the United States. Such officer is hereby authorized and directed to accept service of process on behalf of this Company in any such suit."

The complaint alleged that, in May of 1974, Kevin Haran and his father sued Union Carbide, based on Kevin's injuries when he burst into flames after being sprayed with Union Carbide's 6-12 Plus insect repellent. In April of 1984, about 10 days before the Haran trial, Union Carbide notified Appalachian of the pending claim. Appalachian told Union Carbide that further handling was subject to a complete reservation of its rights and that Union Carbide had breached its obligation by unreasonably failing to attempt to settle. In May of 1984, the Haran jury returned a verdict against Union Carbide for $2.75 million. Union Carbide asserted it was questionable whether Appalachian would fulfill its obligations under the policy in light of its reservation of rights.

In June of 1984, Appalachian filed a notice of motion and motion to dismiss or stay the action on the ground of forum non conveniens. The motion added certain facts omitted from the complaint. Kevin Haran's injuries were sustained at his home in New York. The Haran trial took place in a New York state court. Union Carbide's insurer for the first $500,000 of liability per occurrence was American Motorists Insurance Company (AMI), an Illinois corporation. Union Carbide had refused a settlement offer near the close of trial of $650,000, despite Appalachian's unconditional offer to reimburse for the amount exceeding $500,000. After the verdict the Haran plaintiffs were granted the option to stipulate to a reduced verdict of $1.5 million or proceed to retrial on the damages issue.

Appalachian complained that Union Carbide had "selected this Court situated 2,500 miles from the locus of any act or person involved with the controversy solely to avail itself of a perceived benefit from the application of California law." It had recently filed against Union Carbide and AMI a complaint for declaratory relief in the United States District Court for the Southern District of New York, seeking a determination of coverage obligations for the Haran claim. It requested that the court dismiss Union Carbide's claim on the ground that California had no interest in the resolution of the controversy.

Appalachian filed with its motion the declaration of Arthur S. Barry, its assistant vice president responsible for claims administration of the Union Carbide policy. Mr. Barry detailed the progress of the Haran trial and settlement negotiations, indicating that all the witnesses were located either in New York or Connecticut. In his 18 years of experience, Mr. Barry had "come to understand that that [Service of Suit] clause was voluntarily developed by Lloyd's of London many years ago, as a response to competitor's arguments that Lloyd's was not amenable to process in the United States and that the potential customer should therefore place its business with a domestic company that was subject to service process." He further stated that he did not understand the clause as intended to give an insured the option of suing in a state bearing no relationship to the claim, and Appalachian certainly had not intended that result.

In opposing Appalachian's motion, Union Carbide relied on the service of suit provision and the fact that both parties had substantial business operations in California. A declaration by a Union Carbide employee indicated that the company had over $233 million in assets in this state in 1982 and paid over $1.8 million in franchise and property taxes here in 1983. Appalachian's financial statement showed that in the first quarter of 1984, it

had written direct premiums of over $1.38 million and paid direct losses of over $760,000 in California.

The trial court denied Appalachian's motion, finding: "Defendant agreed in the insurance contract that plaintiff could choose the forum. Implicit in the agreement was that absent an unreasonable choice, the selection should be honored. [¶] California may be inconvenient but it is no [*sic*] an unreasonable choice."

Appalachian sought mandate with this court, complaining that the trial court failed to apply the applicable criteria and abused its discretion.[1] We issued the alternative writ.

As the United States Supreme Court explained in *Gulf Oil Corporation* v. *Gilbert* (1947) 330 U.S. 501, 507 [91 L.Ed. 1055, 1062, 67 S.Ct. 839]: "The principle of *forum non conveniens* is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." Both private and public interests are pertinent: "*An interest to be considered, and the one likely to be most pressed, is the private interest of the litigant.* Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforcibility of a judgment if one is obtained. The court will weigh relative advantages and obstacles to fair trial. It is often said that the plaintiff may not, by choice of an inconvenient forum, 'vex,' 'harass,' or 'oppress' the defendant by inflicting upon him expense or trouble not necessary to his own right to pursue his remedy. But unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed. [¶] *Factors of public interest also have a place in applying the doctrine.* Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin. Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at

---

[1]The petition indicates that AMI has filed its answer in the pending New York case and also has filed a counterclaim against Appalachian and a cross-complaint against Union Carbide.

home. There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." (*Id.*, at pp. 508-509 [91 L.Ed. at pp. 1062-1063].) (Italics added; fn. omitted.)

■ In California, the doctrine of forum non conveniens is codified in Code of Civil Procedure section 410.30, subdivision (a) which states: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

The doctrine "is typically applied to litigation where all of the parties are out-of-state residents and where the cause of action arose outside the forum state. [Citation.]" (*Thomson* v. *Continental Ins. Co.* (1967) 66 Cal.2d 738, 742 [59 Cal.Rptr. 101, 427 P.2d 765]; Judicial Council com. to Code Civ. Proc., § 410.30; 14 West's Annot. Code Civ. Proc. (1973 ed.) p. 493; Note, *Forum Non Conveniens in California: Code of Civil Procedure Section 410.30* (1970) 21 Hastings L.J. 1245, 1247.)

■ Like *Gulf Oil,* the California courts have recognized that the doctrine requires consideration of both public and private interests. Thus, in *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577 [268 P.2d 457, 43 A.L.R.2d 756], the court stated: "[W]e are of the view that the injustices and the burdens on local courts and taxpayers, as well as on those leaving their work and business to serve as jurors, which can follow from an unchecked and unregulated importation of transitory causes of action for trial in this state . . . require that our courts, acting upon the equitable principles and within the constitutional limits hereinabove stated, exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere. [Citation.]" (*Id.*, at pp. 583-584.)

Similarly, in *Goodwine* v. *Superior Court* (1965) 63 Cal.2d 481, 485 [47 Cal.Rptr. 201, 407 P.2d 1], the Supreme Court said: "In determining the applicability of the doctrine, the court must consider the public interest as well as the private interests of the litigants."

■ The applicable criteria for ruling on a motion to dismiss or stay on the ground of forum non conveniens are set forth in *Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105 [90 Cal.Rptr. 461].

The petitioner in *Great Northern* was a railway company with its principal place of business in Minnesota and general offices in Washington. It oper-ated a small amount of track in California and maintained "off-line" offices here for solicitation of business. The decedent, a Washington resident, was a railway employee who was killed in Washington while performing his duties. The decedent's widow employed a California law firm to bring the wrongful death action against the railway. The law firm secured the appointment of its employee as the California administratrix of the estate, and filed a California action as her counsel. The trial court refused to dismiss on forum non conveniens grounds even though the decedent had no estate in California other than the cause of action, all the anticipated witnesses came from Washington, the California case would take longer to reach trial than a Washington case would, and it would cost the railway considerably more money.

■ *Great Northern* recognized that application of the doctrine of forum non conveniens rests in the trial court's discretion, and that the plaintiff's choice of forum is rarely disturbed unless the balance weighs strongly in favor of the defendant. (12 Cal.App.3d at p. 110.) "Nevertheless, the exercise of such discretion may not be arbitrary; it must be exercised in conformity with the spirit of the law and in a manner to subserve and not impede the ends of substantial justice. [Citation.] Where the balance does weigh heavily in a defendant's favor it becomes the court's duty to apply the doctrine." (*Ibid.*)

*Great Northern* gave only "scant consideration" to the fact that the railway did some business in California, since that fact provided venue, but forum non conveniens allows a court to resist imposition on its jurisdiction even when venue is established. (12 Cal.App.3d at p. 112.) ■ The opinion went on to list 25 legitimate factors which should be considered in determining the applicability of the doctrine. (12 Cal.App.3d at pp. 112-115.)[2]

---

[2]Those factors are: 1. The amenability of the defendant to personal jurisdiction in the alternative forum.

2. The relative convenience to the parties and witnesses of trial in the alternative forum.

3. The differences in conflict of law rules applicable in this state and in the alternative forum.

4. The principal place of business of the defendant.

5. Whether the situation, transaction or events out of which the action arose exists, occurred in, or had a substantial relationship to this state.

6. Whether any party would be substantially disadvantaged in having to try the action (a) in this state or (b) in the forum in which the moving party asserts it ought to be tried.

7. Whether any judgment entered in the action would be enforceable by process issued or other enforcement proceedings undertaken in this state.

8. Whether witnesses would be inconvenienced if the action were prosecuted (a) in this

Weighing those factors, the *Great Northern* court found that the trial court had abused its discretion in failing to apply the doctrine of forum non conveniens, as "the ends of justice and fairness require that the action be tried in Washington where the accident occurred and where the real party in interest and the witnesses reside." (12 Cal.App.3d at p. 115.)

■ In the case at bench, Union Carbide has never controverted Appalachian's claims that 22 of the 25 *Great Northern* criteria weigh in favor of dismissal of this action. Union Carbide has emphasized only that both it and Appalachian maintain substantial business operations in this state. That fact does not automatically provide California with an interest in this dispute. ■ As we found in *Gould, Inc.* v. *Health Sciences, Inc.* (1976) 54 Cal.App.3d 687, 693 [126 Cal.Rptr. 726], the fact that a large national corporation conducts some business in this state does not bring it within the favored position, for forum non conveniens purposes, of a plaintiff residing solely in this state.[3]

---

state or (b) in the forum in which the moving party asserts it ought to be prosecuted.

9. The relative expense to the parties of maintaining the action (a) in this state and (b) in the state in which the moving party asserts the action ought to be prosecuted.

10. Whether a view of premises by the trier of fact will or might be necessary or helpful in deciding the case.

11. Whether prosecution of the action will or may place a burden on the courts of this state which is unfair, inequitable or disproportionate in view of the relationship of the parties or of the cause of action to this state.

12. Whether the parties participating in the action have a relationship to this state which imposes upon them an obligation to participate in judicial proceedings in the courts of this state.

13. The interest, if any, of this state in providing a forum for some or all of the parties to the action.

14. The interest, if any, of this state in regulating the situation or conduct involved.

15. The avoidance of multiplicity of actions and inconsistent adjudications.

16. The relative ease of access to sources of proof.

17. The availability of compulsory process for attendance of witnesses.

18. The relative advantages and obstacles to a fair trial.

19. The public interest in the case.

20. Whether administrative difficulties and other inconveniences from crowded calendars and congested courts are more probable in the jurisdiction chosen by plaintiff.

21. Whether imposition of jury duty is imposed upon a community having no relation to the litigation.

22. The injustice to, and burden on, local courts and taxpayers.

23. The difficulties and inconvenience to defendant, to the court, and to jurors hearing the case, attending presentation of testimony by depositions.

24. Availability of the forum claimed to be more appropriate.

25. The other practical considerations that make trial of a case convenient, expeditious and inexpensive.

[3]A different situation would be presented if the litigants were incorporated in California or had their principal place of business here. (*Holmes* v. *Syntex Laboratories, Inc.* (1984) 156 Cal.App.3d 372, 387 [202 Cal.Rptr. 773]; *Bechtel Corp.* v. *Industrial Indem. Co.* (1978) 86 Cal.App.3d 45, 51 [150 Cal.Rptr. 29]; *Brown* v. *Clorox Co.* (1976) 56 Cal.App.3d 306, 311 [128 Cal.Rptr. 385].) Moreover, we see no significance to the fact

In *Outboard Marine Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 434, 442 [130 Cal.Rptr. 642], the court held that a California trial court abused its discretion in denying a motion to dismiss on forum non conveniens grounds, where there was no legitimate interest to be served by a California trial, and "[t]he ends of justice and fairness to litigants, courts, and taxpayers require[d] that the action be tried in Wyoming." ▇▇▇ Similarly here, if the *Great Northern* criteria apply, the trial court abused its discretion in failing to grant Appalachian's motion. The issue is whether those criteria apply, given the service of suit clause in the insurance policy.

We find the logic of *Plum Tree, Inc.* v. *Stockment* (3rd Cir. 1973) 488 F.2d 754, to be compelling.

*Plum Tree* discussed the effect of a forum selection clause on a motion to transfer pursuant to 28 United States Code section 1404(a), which provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The court stated: "[T]he existence of a valid forum-selection clause whose enforcement is not unreasonable does not necessarily prevent the selected forum from ordering a transfer of the case under § 1404(a). Congress set down in § 1404(a) the factors it thought should be decisive on a motion for transfer. Only one of these—the convenience of the parties—is properly within the power of the parties themselves to affect by a forum-selection clause. The other factors—the convenience of witnesses and the interest of justice—are third party or public interests that must be weighed by the district court; they cannot be automatically outweighed by the existence of a purely private agreement between the parties. Such an agreement does not obviate the need for an analysis of the factors set forth in § 1404(a) and does not necessarily preclude the granting of the motion to transfer." (*Plum Tree, Inc.* v. *Stockment, supra,* 488 F.2d at pp. 757-758.)

In *Gould, Inc.* v. *National Union Fire Insurance Co.* (N.D. Ill. Nov. 17, 1983, Dock. No. Civ. 82-C-3154 [Lexis Genfed library—cases file]), the court relied on *Plum Tree* in granting an insurance company's motion to transfer an action from an Illinois to a Missouri district court. Even though the policy contained a provision that the insurance company would submit at the insured's request to the jurisdiction of any court of competent jurisdiction within the United States, the third party or public interests had to be weighed by the trial court. The service of suit clause meant that the

---

Appalachian utilized the courts of this state in *Appalachian Insurance Co.* v. *Rivcom Corp.* (1982) 130 Cal.App.3d 818, 821 [182 Cal.Rptr. 11], as that case involved property in Ventura County.

convenience of the parties weighed in favor of suit in the forum chosen by the plaintiff, but transfer could be warranted by the remaining factors.

■ We agree with the *Plum Tree-Gould* reasoning. In California, as in the federal courts, the doctrine of forum non conveniens is designed to serve the interests both of the litigants and the public. (*Price* v. *Atchison, T. & S. F. Ry. Co., supra,* 42 Cal.2d at pp. 583-584; *Goodwine* v. *Superior Court, supra,* 63 Cal.2d at p. 485; *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 112-115.) Those public interests "cannot be automatically outweighed by the existence of a purely private agreement between the parties." (*Plum Tree, Inc.* v. *Stockment, supra,* 488 F.2d at p. 758.) ■ The service of suit clause did not absolve the trial court from its duty to consider the effect of the *Great Northern* criteria on the case at bench.

■ Union Carbide has relied on a series of cases which denied insurance companies the right to transfer state court actions by insureds to neighboring federal courts due to "Service of Suit" clauses in the policies.[4] Those cases would be controlling here if we were considering an attempt by Appalachian to remove the litigation from the state court to the local federal court in California. This case involves something totally different: the propriety of trial in a distant forum which bears no connection to the events of the case. We see no reason why the taxpayers and courts of California should bear the burden of this lawsuit between two East Coast corporations respecting an East Coast claim. California courts do not throw their doors wide open to forum shopping. (*Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 593-594 [142 Cal.Rptr. 478].)

Our conclusion is further strengthened by the declaration of Appalachian's vice president, indicating that the service of suit clause was not intended to give Union Carbide the right to sue in a state bearing no relationship to the claim. ■ Such evidence is admissible to explain a meaning to which the language of a contract is reasonably susceptible. (*Pacific Gas & E. Co.* v. *G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373], 37; 2 Jefferson, Cal. Evidence Benchbook (2d ed. 1984) Parole Evidence Rule, § 32.2,

---

[4]*General Phoenix Corporation* v. *Maylon* (S.D. N.Y. 1949) 88 F.Supp. 502; *Euzzino* v. *London & Edinburgh Insurance Company* (N.D. N.C. 1969) 228 F.Supp. 431; *Perini Corporation* v. *Orion Insurance Company* (E.D. Cal. 1971) 331 F.Supp. 453; *Wilson* v. *Continental Casualty Company* (1966) 255 F.Supp. 622; *Oil Well Service Company* v. *Underwriters at Lloyd's London* (C.D. Cal. 1969) 302 F.Supp. 384; *Capital Bank & Trust* v. *Associated Intern. Ins.* (M.D. La. 1984) 576 F.Supp. 1522.

pp. 1138-1140.) Union Carbide submitted no contrary declaration. We decline to give the service of suit clause a meaning which was not intended by the parties.

Finally, we stress the critical distinction between this case and cases which have enforced contractual clauses which achieve certainty and predictability by providing for a specific forum. (See generally, Note, *Forum Selection Clauses in International and Interstate Commercial Agreements* (1982) U. Ill.L.Rev. 133, 134.)

In *The Bremen et al.* v. *Zapata Off-Shore Co.* (1971) 407 U.S. 1 [32 L.Ed.2d 513, 92 S.Ct. 1907], an American and a German corporation had contracted that any disputes were to be resolved in the London Court of Justice. The Supreme Court enforced the clause, notwithstanding the absence of any connection between the dispute and Britain. Recognizing that forum selection clauses had not been favored historically, the court adopted the more modern view that "such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." (*Id.*, at p. 10 [32 L.Ed.2d at p. 520].) Factors which could render such clauses unreasonable included fraud, undue influence, overwhelming bargaining power, or a showing that enforcement of the clause would effectively deprive a party of his day in court. (*Id.*, at pp. 12, 18 [32 L.Ed.2d at pp. 521, 525].)

The difference between *The Bremen* and the case at bench lies in the type of forum selection clause involved. In *The Bremen* selection of the specific forum in London was "clearly a reasonable effort to bring vital certainty to this international transaction and to provide a neutral forum. . . ." (407 U.S. at p. 17 [32 L.Ed.2d at p. 525].) Given the strong evidence that the clause was an important part of the agreement, the parties must have conducted their negotiations with the clause prominently in mind. (*Id.*, at p. 14 [32 L.Ed.2d at p. 523].) It could therefore be said with reasonable assurance that any inconvenience had been contemplated when the parties entered the contract. It is "difficult to see why any such claim of inconvenience should be heard to render the forum clause unenforceable." (*Id.*, at p. 16 [32 L.Ed.2d at p. 524].)

In contrast, the service of suit clause involved here provided no certainty, as it did not specify a particular forum. There is also no indication that the parties foresaw use of a forum bearing no relationship to the events; indeed, the declaration of Appalachian's vice president is to the contrary. "The remoteness of the forum [suggests] that the parties did not have the particular controversy in mind when they made their agreement." (*The Bremen*

*et al.* v. *Zapata Off-Shore Co., supra,* 407 U.S. at p. 17 [32 L.Ed.2d at p. 524].)

For similar reasons, this case is different from *Smith, Valentino & Smith, Inc.* v. *Superior Court* (1976) 17 Cal.3d 491 [131 Cal.Rptr. 374, 551 P.2d 1206], which enforced a clause under which each contracting party agreed to bring an action only in the other's home state. The *Smith* court found that "both [parties] reasonably [could] be held to have contemplated in negotiating their agreement the additional expense and inconvenience attendant on the litigation of their respective claims in a distant forum; such matters are inherent in a reciprocal clause of this type." (*Id.,* at p. 496.) Such matters are not inherent in the type of forum selection clause involved here.[5]

The principle that the doctrine of forum non conveniens protects the public interest as well as that of the litigants is paramount in our determination that the forum selection clause in this contract does not preclude the application of the doctrine of forum non conveniens.

Code of Civil Procedure section 410.30, subdivision (a) authorizes either a stay or a dismissal on forum non conveniens grounds. Because California has no interest in the lawsuit and neither party is a California resident, dismissal is the appropriate remedy. (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 859 [126 Cal.Rptr. 811, 544 P.2d 947].)

Let the peremptory writ of mandate issue directing dismissal of the action.

Kingsley, J., and Arguelles, J., concurred.

---

[5]For the same reason, we reject the application of *Pelleport Investors* v. *Budco Quality Theatres* (1984) 741 F.2d 273, 280. *Pelleport* enforced a clause that disputes were to be litigated in Los Angeles Superior Court, finding that such clauses allowed "parties in routine commercial transactions to eliminate the uncertainties of where litigation will take place." The clause here was fraught with uncertainty. The same distinction applies to *Furda* v. *Superior Court* (1984) 161 Cal.App.3d 418 [207 Cal.Rptr. 646], in which the contract provided that any disputes were to be litigated in Michigan, one of the parties' home state.