[Civ. No. 56529. Second Dist., Div. One. Aug. 31, 1979.]

MICHAEL PHILIP JAGGER, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
BIANCA JAGGER, Real Party in Interest.

580

COUNSEL

Mitchell, Silberberg & Knupp, Arthur Groman, Howard S. Smith and Judith N. Levy for Petitioner.

No appearance for Respondent.

Marvin M. Mitchelson and Harold Rhoden for Real Party in Interest.

OPINION

**LILLIE, Acting P. J.**—Petition for writ of mandate (Code Civ. Proc., § 418.10) filed by Michael Philip Jagger seeks to overturn a superior court order denying his motion to quash service for lack of jurisdiction, granting stay to permit the English court to proceed with due diligence and denying motion to dismiss for forum non conveniens petition for legal separation and dissolution filed by real party in interest, Bianca Jagger. Subsequent to its stay of the action the trial court entered at least one order for support. Petitioner made no appearance in connection with such order. We issued alternative writ ordering the court to vacate said order and enter a new and different order "denying said motion to quash and granting a motion to stay on the grounds of forum non conveniens." Thus the sole issue before this court is whether petition of real party in interest should be abated for inconvenience of forum.[1]

In support of and in opposition to the motions to quash and dismiss for forum non conveniens various affidavits (including those of the parties) and points and authorities were filed. An evidentiary hearing was had on the motions, and Bianca and an expert witness testified. The bulk of the evidence relates to the matter of jurisdiction. There is little or no conflict in the factual posture of the case insofar as concerns the issue of

[1]The alternative writ in effect denied relief against that portion of the court's order denying motion to quash for lack of jurisdiction. We concluded that under the concept of fair play and substantial justice of *International Shoe Co.* v. *Washington*, 326 U.S. 310, 316 [90 L.Ed. 95, 101-102, 66 S.Ct. 154, 161 A.L.R. 1057], petitioner has sufficient minimum contacts with California to subject him to a judgment in personam; and we find no cause to depart from the limited scope and precise terms of the alternative writ. (5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 169, p. 3933; *Barclays Bank of California* v. *Superior Court*, 69 Cal.App.3d 593, 602 [137 Cal.Rptr. 743]; *Bortin* v. *Superior Court*, 64 Cal.App.3d 873, 880 [135 Cal.Rptr. 30].)

convenient forum. A portion of the evidence hereinafter set out consists of factual background.

Petitioner, an internationally known rock singer and musician, is English by birth traveling on a British passport. In 1968 he purchased, among other property since disposed of, a home at 48 Cheyne Walk, Chelsea, London, which he still owns. He left England in April 1971 and took residence in France where he and Bianca were married on May 12, 1971. Before the marriage they executed in France a premarital agreement prepared by a French lawyer and witnessed by a French notary. The parties lived in France until shortly before the birth of their only child Jade now seven years old, when they took residence in England. Until recently petitioner has maintained an unused apartment in France; presently he rents an apartment in New York City.

Petitioner claims to be a resident of the Island of St. Vincent in the West Indies; in January 1979 he purchased there a home, colorfully described by Bianca's attorney as an old shack, and has commenced construction of a large house on the property. He has made only infrequent visits to California and those, in connection with furthering his career; he stayed at hotels and in rented properties. He owns no real property in California. He was in this state for ten days in July 1975 and five days in September 1976.[2] The only time the parties spent together in Los Angeles was from December 1971 through March 1972. Petitioner has no bank account or any personal property in California. Although Bianca claims he has made recordings in Los Angeles, the proof beyond her statements is weak in that it relates to the 1960's. Petitioner claims that since 1971 he has recorded no albums and made no films in California.

Bianca was born in Nicaragua. Two of her passports indicate she is a British citizen, a third is a Nicaraguan passport. She claims she and petitioner have lived out of a suitcase jetting around the world with occasional stops in California. From time to time since September 1977 she has resided with Jade in the London home at 48 Cheyne Walk; Jade is enrolled in school in London. Bianca stays in the London house, which

[2]The parties separated in 1977. Subsequently petitioner spent a few days here in January 1978, and met with film people for five days in April and May 1978 but no work resulted. In August 1978 he rented a house in Los Angeles (because of his dislike for hotels) and stayed there until December 22, 1978; the lease expired but was renewed in February 1979 for an additional four months. Bianca claims he intended to move to Los Angeles so that Jade could go to school, but petitioner denies this claiming his visits between August and December 1978 were for business purposes.

she claims is in a state of disrepair, when she wishes to be with Jade, but has lived where she and her suitcase were. The parties last lived together in 1977 in England.

On May 15, 1978, Bianca filed an action for divorce in the High Court of Justice, Family Division in London, England alleging among other things that she had been habitually a resident of England and Wales for a period of one year prior thereto, and that she and Jagger last lived together in London. Bianca claims her London solicitor failed to explain to her the meaning of the residence requirement in England, and when asked to respond to a bill of particulars she realized she could not satisfy the residence requirement, thus she gave up her English proceeding, discussed the matter with an attorney in New York and came to Los Angeles to consult with an attorney here. She was in Los Angeles briefly commencing January 1979, staying at a hotel. She claims she moved to California and intends to reside here to further her career as an actress. However, she remained only while the papers for her Los Angeles action were being prepared, signed them and departed for England where she lived until April 10, 1979. On February 9, 1979, while Bianca was in England, her counsel filed her petition for legal separation and dissolution in the Superior Court of Los Angeles County. Petitioner was served with summons in the California action in New York on April 3, 1979. Petitioner's solicitors had accepted service on his behalf in the English divorce proceedings on November 1, 1978, and on April 4, 1979, he appeared generally and filed an answer therein. In the California case he entered what was deemed by the court a special appearance to challenge the jurisdiction of the California court and the convenience of the California forum claiming England to be the convenient forum.

The doctrine of forum non conveniens has been codified as section 410.30, Code of Civil Procedure. (*Great Northern Ry. Co.* v. *Superior Court,* 12 Cal.App.3d 105, 109-110 [90 Cal.Rptr. 461].) It provides in subdivision (a), "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

■ "Application of the doctrine is a matter of trial court discretion; denial of a motion to dismiss or abate for absence of a convenient forum will not be overturned on appeal unless the 'balance weighs strongly' in favor of the moving party. [Citation.]" (*International Harvester Company* v. *Superior Court* (1979) 95 Cal.App.3d 652, 656 [157 Cal.Rptr.

324].) ██ Weighing the factors which guide the court's discretion (*International Harvester Company* v. *Superior Court, supra*; *Henderson* v. *Superior Court,* 77 Cal.App.3d 583, 595-597 [142 Cal.Rptr. 478]; *Great Northern Ry. Co.* v. *Superior Court,* 12 Cal.App.3d 105, 113-115 [90 Cal.Rptr. 461]), we conclude that the failure to apply the doctrine of forum non conveniens was an abuse of judicial discretion, and that the ends of justice and fairness require that the action be tried in the English court.

██ The primary factors which must be weighed by the court ruling upon the motion have been articulated in *International Harvester Company* v. *Superior Court, supra,* 95 Cal.App.3d 652, 656, and we adopt them here.

The amenability of the defendant to personal jurisdiction in an alternative forum.

The relative convenience to the parties and witnesses of trial in the alternative forum.

The differences in conflict of law rules applicable in California and in the alternative forum.

The principal place of business of the defendant.

The extent to which the cause of action arose out of events related to California.

The extent to which any party will be substantially disadvantaged by a trial in California as contrasted with trial in the forum suggested by the moving party.

Relative enforceability of judgments rendered in California or the alternative forum.

Relative expense to the parties of proceeding in California or the alternative forum.

The significance of a view of physical evidence not conveniently movable from the alternative forum.

The extent to which pursuit of the action in California places a burden upon the state judicial resources which is disproportionate to the relationship of the parties or cause of action to California.

The extent to which the relationship of the moving party to California obligates him to participate in judicial proceedings in this state.

The interest of California in providing a forum for some or all of the parties.

The avoidance of multiplicity of actions and inconsistent adjudications.

The relative ease of access to sources of proof.

The availability of compulsory process to secure the compulsory attendance of witnesses in California as contrasted with the alternative forum.

The relative advantages and obstacles to a fair trial in California and the alternative forum.

The California public interest in the case.

The extent to which the choice of the California forum creates administrative difficulties and other inconveniences by crowding court calendars.

The burden upon jurors, local courts, and taxpayers of a jurisdiction having little relation to the subject of the litigation.

The difficulties and inconvenience to the moving party, to the court, and to jurors incident to the presentation of evidence by deposition.

The availability of the suggested alternative forum.

■ Those factors, when considered in the context of the record before us, weigh so heavily in favor of establishing inconvenience of the California forum as to compel trial court action to abate proceedings on Bianca's petition.[3]

---

[3]The trial court denied the motion to quash finding that "California has jurisdiction on the dissolution but defers to the English Court to permit that Court to proceed on its case with due diligence. Further proceedings in California are stayed. If the English Court

Most of the factors indicate that the California forum is inconvenient; the remaining factors are neutral. Bianca chose two forums, first, the English court, then the Superior Court of Los Angeles County. California has personal jurisdiction over petitioner herein. Thus it appears that he too is subject to two jurisdictions for he has entered a general appearance and filed an answer in the English forum. Moreover, on July 16, 1979, after a hearing in the English court, Mr. Justice Eastham, High Court of Justice, Family Division found that both parties were subject to jurisdiction of the English forum and ordered[4] the cause "do continue" in the English court, and further proceedings on divorce, financial provisions and wardship of Jade be adjourned to a date certain. Thus both parties are now subject to the jurisdiction of the English forum; and Bianca's cause therein is ready to proceed when the stay is lifted in the English court.

Petitioner is a British subject, as is Bianca; he owns a home in London where their daughter lives, and goes to school. If Bianca resides anywhere at the present, it is in London where she has spent considerable time with Jade. If custody (wardship), visitation and support of Jade become a main

---

does not accept jurisdiction the California Court will be available for further proceedings within 10 days after the English Court's trial decision." and denied the motion to dismiss for forum non conveniens.

In determining the issue of jurisdiction, the court branded Bianca's testimony inconclusive and unpersuasive particularly in the area of filing her petition for divorce in the English court and as suspect, Jagger's conduct in connection with the English action. On the issue of forum non conveniens the court, about convinced by the representations of Mr. Mitchelson that the English court would not take jurisdiction and that forum would not be open to the parties, was confronted with a motion to dismiss. It was troubled with the inappropriateness of dismissal where a suitable alternative forum is not available, and in light of how the court believed the English court would rule, declined to take such a drastic step noting that the suit should be entertained no matter how "inappropriate the forum" if Jagger cannot be subjected to jurisdiction elsewhere. It was in this context that the court believed the evidence to be unpersuasive "at present that California is an inconvenient forum." The trial court's conclusion does not follow from its reasoning. Having determined the California forum to be "inappropriate" subject to the contingency of continuation of English jurisdiction the trial court was obligated to grant the motion to stay the California case for inconvenient forum while denying the motion to dismiss on the same ground. (*Henderson* v. *Superior Court,* 77 Cal.App.3d 583, 588-589 [142 Cal.Rptr. 478].) That trial court action would have divested it of power to take further action as long as the English forum was available.

[4]We take judicial notice of order of July 16, 1979, made by Mr. Justice Eastham, High Court of Justice, Family Division. It provides for, among other things, a stay of Bianca's divorce petition in the English court "for so long as the petitioner continues to prosecute the proceedings numbered 0985336 [*sic*] filed in the Superior Court of California"; and ordered "that the divorce proceedings herein numbered 5894 of 1978, do continue in the High Court of Justice (Family Division) subject to the stay . . . ."

issue, visual inspection of the adequacy of the home in which Jade resides and is cared for and the school she attends in all probability will become significant and, of course, these premises are readily accessible to physical view in England. Another element of the litigation appears to be the interpretation and the validity of the premarital agreement executed by the parties in France where they were married, and prepared and witnessed by witnesses residing in France across the Channel. The parties lived in France, then resided in England in petitioner's home. Although they made infrequent trips to California, the only time the parties lived together here was between December 1971 and March 1972. This is about the only marital contact with California. Nothing in the record shows that petitioner's business activities are centered in California, indeed there is only weak evidence that since their marriage any recordings have been made in California. There appear to be no witnesses or other evidence in California relevant to any issue in the litigation between the parties. Petitioner and the child reside 6,000 miles from Los Angeles and Bianca convinced neither the English nor the California forum she now resides in California; she spends considerable time with her daughter in London. The cost and inconvenience to petitioner of transporting the parties and witnesses who reside either in England or France to California to defend this action are substantially more, as is the resulting inconvenience to the witnesses themselves, than if Bianca proceeds with her cause in England.

Who can deny that California courts are congested, and that the family courts are much occupied with the issues of dissolution, child custody, support and division of property of persons resident in California arising out of activities carried on and agreements made by them in California. The Superior Court of Los Angeles County does not need another case in which the parties were married, executed a premarital agreement and lived in one country and subsequently lived together, own property, and maintain a child who lives and goes to school in another, and in which there have been only few marital contacts with California. On the other hand the English forum, regardless of the condition of its calendar, is ready to proceed on Bianca's petition; it offers relative ease of access to sources of proof, witnesses, events and relevant documents in England and France. Witnesses available for attendance in the English court cannot be compelled to attend court in California. Under the special circumstances here, California has no substantial interest in retaining the proceeding for the resolution of the issues arising out of this litigation, and has no interest in regulating the situation or conduct involved. Moreover, it appears that any judgment rendered in California would

require a further judgment in England. Finally, the injustice to and burden upon the court and the taxpayers of a jurisdiction (California) having little relation to the subject of the litigation are substantial.

Other factors are neutral. Neither party has claimed any prejudice under conflict of law rules applicable in California and in the alternative forum, although it has been suggested that English standards for custody and support of an English child are preferable. No problems of enforceability of judgment are apparent. Finally, there appears to be no reason a fair trial cannot be had in either forum.

Bianca argues among other things that the forum most convenient for petitioner is California because he is represented by counsel here. ■ Convenience of counsel for either party may not be given weight; nor may the probability, if it exists, that the California court may be generous in its awards. (*Great Northern Ry. Co.* v. *Superior Court,* 12 Cal.App.3d 105, 112 [90 Cal.Rptr. 461].)

■ Finally, the circumstances of the cause convince us that a stay is a more appropriate remedy than dismissal. Ordinarily dismissal is an exceptional remedy, and a stay the usual one so that if obstacles develop to litigation in the convenient forum the parties may resume litigation in California. (*Henderson* v. *Superior Court,* 77 Cal.App.3d 583, 599 [142 Cal.Rptr. 478].) Moreover, this cause is complicated by the stay granted in the English forum. By order of the High Court of Justice, Bianca's divorce proceedings in the English court are stayed for as long as she continues to prosecute the proceedings in the Superior Court of Los Angeles. It is obvious beyond dispute that Bianca desires to proceed in California and that her disability under the English stay to proceed with her English action will suffer her no loss. An abatement of the proceedings in California will merely prevent her further prosecution of the cause in this forum and permit her to proceed in the English court if she wishes a resolution of the issues of divorce, child custody, support and division of property.

Let a peremptory writ of mandate issue directing the superior court to vacate its order of May 14, 1979, denying petitioner's motion to quash service for lack of jurisdiction, granting stay to permit the English court to

proceed with due diligence, and denying motion to dismiss for forum non conveniens, and to enter a new and different order denying said motion to quash and granting a stay of the proceedings on the ground of forum non conveniens.

Thompson, J., and Hanson, J., concurred.

A petition for a rehearing was denied September 26, 1979, and the petition of the real party in interest for a hearing by the Supreme Court was denied November 1, 1979.