[No. A019462. First Dist., Div. Five. May 24, 1984.]

CATHERINE HOLMES et al., Plaintiffs and Appellants, v.
SYNTEX LABORATORIES, INC., et al., Defendants and Respondents.

[And nineteen other cases.]*

*Lindsay v. Syntex Laboratories, Inc.; Quigley v. Syntex Laboratories, Inc.; Geoghegan v. Syntex Laboratories, Inc.; Diggins v. Syntex Laboratories, Inc.; Skan v. Syntex Laboratories, Inc.; Thomas v. Syntex Laboratories, Inc.; McCulloch v. Syntex Laboratories, Inc.; Hart v. Syntex Laboratories, Inc.; Hurley v. Syntex Laboratories, Inc.; McCluskey v. Syntex Laboratories, Inc.; Firth v. Syntex Laboratories, Inc.; Haythornthwaite v. Syntex Laboratories, Inc.; Percevicius v. Syntex Laboratories, Inc.; Dennis v. Syntex Laboratories, Inc.; Angus v. Syntex Laboratories, Inc.; McLoughlin v. Syntex Laboratories, Inc.; Barr v. Syntex Laboratories, Inc.; Sidebottom v. Syntex Laboratories, Inc.; Medd v. Syntex Laboratories, Inc.

COUNSEL

Walter H. Walker III, Sterns, Smith, Elstead & Walker and Sterns, Smith & Walker for Plaintiffs and Appellants.

Raoul D. Kennedy, Janice C. Hayes, Peter W. Davis, James C. Martin and Crosby, Heafey, Roach & May for Defendants and Respondents.

OPINION

KING, J.—In this case we hold that foreign plaintiffs' choice of California as the forum state for litigation against corporate defendants whose principal places of business are in this state and who are alleged to have committed a tort in California which is the basis for plaintiffs' claim, should not be disturbed, unless defendants establish that the balance of relevant factors weighs strongly in their favor. Absent such a showing, it is an abuse of discretion to grant a motion to dismiss such litigation on the basis of forum non conveniens.

Appellants, a group of British women and spouses of injured or deceased women who allegedly sustained disabling or fatal injuries following ingestion of the oral contraceptive drug Norinyl, appeal from an order dismissing their actions against Syntex Laboratories, Inc., Syntex U.S.A., Inc., and Syntex Corporation (collectively referred to as Syntex) on the ground of forum non conveniens. We conclude that under California law the trial court abused its discretion when it dismissed the action in favor of litigation in the United Kingdom, in view of the inadequacy of existing British law in the field of products liability and other relevant factors which bolster rather than rebut California's policy in favor of a plaintiff's choice of forum.

## I. *Procedural Background*

On May 2, 1979, British citizens Catherine and Leslie Holmes filed in Santa Clara County Superior Court a class action on behalf of other Britons against Syntex Laboratories, Inc., a Delaware corporation with its principal place of business allegedly in Palo Alto, for "damages resulting from defendants' development, testing, manufacture, production, sale, marketing, promotion and advertising" of Norinyl. The complaint alleged causes of action for negligence, strict liability, breach of warranty, fraud and misrepresentation. The major theory of the action is that "defendants caused and allowed" Norinyl to be distributed and marketed in the United Kingdom without adequate warning of known dangerous side effects and medical complications.

The complaint was later amended to name Syntex U.S.A., Inc., a Delaware corporation with its principal place of business allegedly in Palo Alto, and Syntex Corporation, the parent of Syntex Laboratories and Syntex U.S.A., a Panamanian corporation with its principal place of business in Panama and offices in Palo Alto. The amended complaint did not name Syntex Corporation's British subsidiary, Syntex Pharmaceuticals Limited, which Syntex asserts is the source of the Norinyl ingested by the plaintiffs.

Nineteen individual actions by other British citizens were also filed against Syntex. The parties have stipulated to consolidation of those actions with the Holmes' action for purposes of the present appeal, and have agreed that the court documents in the Holmes' action are representative of all actions.

Syntex, rather than answering the complaint, moved for dismissal on the ground of forum non conveniens, asserting that the litigation should take place in Britain. Syntex argued that its British subsidiary "had sole responsibility for all phases of decision-making regarding the compounding, promotion, marketing and distribution of Norinyl" in Britain, and that all relevant events had occurred and all evidence was to be found in Britain. Syntex stipulated that if its motion to dismiss was granted, it would submit

to the jurisdiction of the British courts, waive any statute of limitations defenses under English law for a reasonable period of time, make witnesses and documents available in the United Kingdom, and pay any adverse judgments that might be obtained in the United Kingdom.

On July 15, 1982, after hearing Syntex's motion, the court announced from the bench that the motion was granted relying upon the United States Supreme Court's decision in *Piper Aircraft Co.* v. *Reyno* (1981) 454 U.S. 235 [70 L.Ed.2d 419, 102 S.Ct. 252]. The court cited the location in Britain of the plaintiffs, the doctors who disseminated the drugs, the "various agencies that had anything to do with the drugs," and the "great bulk of all of the liability evidence." The court said that the Santa Clara County Superior Court was "an overburdened court that has just gone through a tremendous budget crisis" and sustained costs of $2,000 per day "just to keep one court open." The court also said, "If the other forum is not a totally unreasonable forum like Chile with its military junta, if it's a forum that a person has a decent chance to have their day in court, I don't see why we should suddenly come over and say: well, American courts can give you a brighter day than an English court."[1]

The court rendered a formal order of dismissal of all actions, subject to the conditions that defendants submit to the jurisdiction of courts in the United Kingdom, waive any statute of limitation defenses provided plaintiffs commence civil actions in Britain within six months of resolution of the present appeal, make witnesses and documents available in Britain, and consent to pay any adverse judgments that might be obtained in the United Kingdom. Appellants challenge the forum non conveniens dismissal.

## II. *The Applicable Law*

### A. *General Principles*

The doctrine of forum non conveniens was established in California by judicial decision and was subsequently codified in Code of Civil Procedure section 410.30. (*Archibald* v. *Cinerama Hotels* (1976) 15 Cal.3d 853, 857 [126 Cal.Rptr. 811, 544 P.2d 947].) That statute provides: "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

---

[1]The court's reference to Chile was apparently made in response to defense counsel's prior reference to the Chilean junta's power to reverse judicial decisions.

■ The determination whether to apply the doctrine rests within the sound discretion of the trial court. "Nevertheless, the exercise of such discretion may not be arbitrary; it must be exercised in conformity with the spirit of the law and in a manner to subserve and not impede the ends of substantial justice." (*Great Northern Ry. Co.* v. *Superior Court* (1970) 12 Cal.App.3d 105, 110 [90 Cal.Rptr. 461].) The trial court's determination will not be disturbed on appeal absent an abuse of discretion. (*Hemmelgarn* v. *Boeing Co.* (1980) 106 Cal.App.3d 576, 584 [165 Cal.Rptr. 190].)

California's forum non conveniens doctrine is derived from federal law. (See *Price* v. *Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577, 580-583 [268 P.2d 457, 43 A.L.R.2d 756].) The federal courts, however, have broader discretion to grant forum non conveniens motions than do state courts, because of their authority to transfer venue to a federal court in another state rather than simply stay or dismiss the action. (Judicial Council com., 14 West's Ann. Cal. Codes, Code Civ. Proc., § 410.30 (1973 ed.) p. 494 (hereafter cited as Judicial Council Comment); Note, *Forum Non Conveniens in California: Code of Civil Procedure Section 410.30* (1970) 21 Hastings L.J. 1245, 1253-1254; see 28 U.S.C. § 1404(a); *Norwood* v. *Kirkpatrick* (1955) 349 U.S. 29, 32 [99 L.Ed. 789, 793, 75 S.Ct. 544].)

In ruling on a forum non conveniens motion, California courts are to consider a variety of factors, 25 of which are enumerated in *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 113-115. (See also *Archibald* v. *Cinerama Hotels, supra,* 15 Cal.3d at p. 860 [citing *Great Northern*]; *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at pp. 584-585.)[2] The Judicial Council Comment identifies two points as being "the

---

[2]The decision in *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at pages 584-585, summarizes these factors as follows: "They include the amenability of the parties to personal jurisdiction in this state and in the alternative forum; the relative convenience to the parties and trial witnesses of the competing forums; the differences in the conflict of law rules applicable in the competing forums; the selection of a convenient, reasonable and fair place of trial; defendant's principal place of business; the extent to which the cause of action arose out of events related to this state; the extent to which any party will be substantially disadvantaged by a trial in either forum; the relative enforceability of judgments rendered in this state or the alternative forum; the relative inconvenience to witnesses and relative expense to parties of proceeding in this state or the alternative forum; the significance and necessity of a view by the trier of fact of physical evidence not conveniently movable from the alternative forum; the extent to which prosecution of the action in this state would place a burden upon this state's judicial resources equitably disproportionate to the relationship of the parties or cause of action to this state; the extent to which the relationship of the moving party to this state obligates him to participate in judicial proceedings here; this state's interest in providing a forum for some or all of the parties; this state's public interest in the litigation; the avoidance of multiplicity of actions and inconsistent adjudications; the relative ease of access to sources of proof; the availability of compulsory process for attendance of witnesses; the relative advantages and obstacles to a fair trial; the burden upon jurors, local court and taxpayers of a jurisdiction having a minimal relation to the subject of the litigation; the difficulties and inconveniences to defendant, the court and jurors incident to the presentation of evidence by deposition; and the availability of the suggested forum."

two most important." The first is that "since it is for the plaintiff to choose the place of suit, his choice of a forum should not be disturbed except for weighty reasons . . . ." (Judicial Council Comment, *supra*, at p. 492; accord, *Brown* v. *Clorox Co.* (1976) 56 Cal.App.3d 306, 311; *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 110.) The second is that "the action will not be dismissed unless a *suitable* alternative forum is available to the plaintiff. . . ." (Judicial Council Comment, *supra,* at p. 492, italics added.)

The remaining factors have been characterized as involving either the private interests of the parties or the public's interest in the litigation. (*Gulf Oil Corp.* v. *Gilbert* (1947) 330 U.S. 501, 508 [91 L.Ed. 1055, 1062, 67 S.Ct. 839].) Factors affecting private interests include such matters as the relative convenience to the parties and witnesses of trial in the proposed alternative forum, and the location of sources of proof. (*Ibid.*; *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 113-114.) Factors affecting the public interest include such matters as possible administrative difficulties and other inconveniences from crowded calendars and congested courts, and whether prosecution of the action will or may place a burden on the California courts which is unfair, inequitable or disproportionate in view of the relationship of the parties or the cause of action to this state. (*Gulf Oil Corp.* v. *Gilbert, supra,* 330 U.S. at p. 508 [91 L.Ed. at p. 1062]; *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 113-114.)

B. *Piper Aircraft Co. v. Reyno*

In 1981, the United States Supreme Court rendered an important decision in the field of forum non conveniens. In that decision, *Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. 235, the court announced significant limitations in federal law as to the two points identified by the Judicial Council comment as being the most important.

The plaintiff in *Piper* was the California representative of the estates of five Scottish citizens killed in an airplane crash in Scotland. The airplane was manufactured in Pennsylvania. (*Id.,* at pp. 238-239 [70 L.Ed.2d at pp. 424-425].) A Pennsylvania district court dismissed the representative's lawsuit for negligence and strict liability on the ground of forum non conveniens. The Third Circuit Court of Appeals reversed the district court: the appellate court cited the rule of substantial deference to the plaintiff's choice of forum (*Reyno* v. *Piper Aircraft Co.* (3d Cir. 1980) 630 F.2d 149, 159), and ruled that dismissal should not result in a change in the applicable law (a change to Scots law would result in loss of the plaintiff's strict liability claim). (*Id.,* at pp. 163-164.)

The United States Supreme Court reversed the Third Circuit, disagreeing with the latter on both points. First, the court held that "[t]he possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight" (*Piper, supra,* 454 U.S. at p. 247 [70 L.Ed.2d at p. 430]) unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" (*id.,* at p. 254 [70 L.Ed.2d at p. 435]). Second, the court held that a foreign plaintiff's choice of forum deserves less deference than that of a citizen plaintiff. (*Id.,* at pp. 255-256 [70 L.Ed.2d at pp. 435-436].)

C. *California Law Contrasted With Piper*

Syntex contends that these two holdings in *Piper* "are critical to and determinative of the issues on this appeal." But preliminarily it must be determined whether *Piper,* a federal case, represents the law of forum non conveniens in California state courts.

Syntex states that, "cases dealing with forum non conveniens in California have mirrored federal law in all respects." A similar statement appears in *Piper* itself, in which the Supreme Court avoided resolution of the issue whether federal or state law of forum non conveniens applies in a diversity case by finding that "Pennsylvania and California law on forum non conveniens dismissals are virtually identical to federal law." (*Piper Aircraft Co.* v. *Reyno, supra,* 454 U.S. at p. 248 fn. 13 [70 L.Ed.2d at p. 431].) The Supreme Court's opinion cites an identical conclusion in the Third Circuit's opinion in *Piper,* in which the appeals court stated that, "cases dealing with forum non conveniens in both California and Pennsylvania have mirrored federal law in all essential respects." (*Reyno* v. *Piper Aircraft Co., supra,* 630 F.2d at p. 158.)

But in so characterizing California law, the Third Circuit had asserted rules of substantial deference to the plaintiff's choice of forum and consideration of an unfavorable change in applicable substantive law resulting from a forum non conveniens dismissal. The United States Supreme Court subsequently, as to federal law, limited the former rule and virtually invalidated the latter. The issue thereby presented is whether California law mirrors federal law as stated in the Third Circuit's opinion or the Supreme Court's opinion. A review of the California cases demonstrates that the rules asserted in the Third Circuit's opinion are firmly engrained in California law, thus Syntex's conclusion that California's law of forum non conveniens has mirrored federal law is incorrect.

First, the rule of substantial deference to the plaintiff's choice of forum has much greater importance in California than in federal courts after *Piper.*

The court in *Piper* said not only that a foreign plaintiff's choice deserves little deference, but also that a "citizen's forum choice should not be given dispositive weight . . . ." (*Piper Aircraft Co. v. Reyno, supra,* 454 U.S. at p. 256 fn. 23 [70 L.Ed.2d at p. 436].) In California, in contrast, the rule of substantial deference has been asserted in cases involving foreign plaintiffs. (E.g., *Brown v. Clorox Co., supra,* 56 Cal.App.3d at pp. 310-311 [Washington State plaintiff; order granting stay reversed]; see also *Jagger v. Superior Court* (1979) 96 Cal.App.3d 579 [158 Cal.Rptr. 163] [parties both British subjects; denial of motion reversed]; *Great Northern Ry. Co. v. Superior Court, supra,* 12 Cal.App.3d at p. 110 [California representative of Washington State resident; denial of motion reversed].) Moreover, the rule is nearly always dispositive of dismissal motions in actions brought by California residents. (*Archibald v. Cinerama Hotels, supra,* 15 Cal.3d at pp. 853, 858 ["we have consistently held that except in extraordinary cases a trial court has no discretion to dismiss an action brought by a California resident on grounds of forum non conveniens."].) Most recently, in *Dendy v. MGM Grand Hotels, Inc.* (1982) 137 Cal.App.3d 457, 460 [187 Cal.Rptr. 95], the court restated the general rule of substantial deference without any reference to *Piper.*

Second, California attaches far greater significance to the possibility of an unfavorable change in applicable law resulting from a forum non conveniens dismissal. Whereas *Piper* states that the possibility of an unfavorable change in law is not relevant unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all," California cases have stated that among the factors relevant to a forum non conveniens inquiry are "[t]he difference in conflict of law rules applicable in this state and in [the] alternative forum" and "[w]hether any party would be substantially disadvantaged in having to try the action (a) in this state or (b) in the forum in which the moving party asserts it ought to be tried." (*Great Northern Ry. Co. v. Superior Court, supra,* 12 Cal.App.3d at p. 113; accord, *Dendy v. MGM Grand Hotels, Inc., supra,* 137 Cal.App.3d at p. 461; *Hemmelgarn v. Boeing Co., supra,* 106 Cal.App.3d at p. 584; *International Harvester Co. v. Superior Court* (1979) 95 Cal.App.3d 652, 656-657 [157 Cal.Rptr. 324]; Judicial Council Comment, *supra,* at p. 491.)

The effect of different conflict of law rules or some other "substantial disadvantage" from a change in forum may be of such a character as to deprive the plaintiff of a "suitable" alternative forum. (See Judicial Council Comment, *supra,* at p. 492.) The denial of a forum non conveniens motion was upheld on such a basis in *International Harvester Co. v. Superior Court, supra,* 95 Cal.App.3d at pages 659-662. The moving party, the subject of a cross-action for indemnity, sought dismissal in favor of litigation

in Kansas, which, unlike California, has abrogated the rule of joint liability among concurrent tortfeasors in conjunction with adoption of a system of comparative fault. The appellate court said that because under Kansas conflict of law rules a Kansas court would apply its own law of indemnity (*id.*, at p. 659), it was "at least an open question" whether the cross-complainants would have any right of indemnity in Kansas, and, "If they do not, the difference in applicable substantive law *virtually dictates trial in California.*" (*Id.*, at p. 660, italics added.) (Compare *Jagger* v. *Superior Court, supra,* 96 Cal.App.3d at p. 589 [neither party claimed prejudice under conflict of law rules applicable in California and alternative forum]; *Henderson* v. *Superior Court* (1978) 77 Cal.App.3d 583, 595 [142 Cal.Rptr. 478] [no prejudice from change in law].)

Similarly, in *Chavarria* v. *Superior Court* (1974) 40 Cal.App.3d 1073, 1075 [115 Cal.Rptr. 549], the court said that a forum non conveniens dismissal in favor of litigation in Texas would have been an abuse of discretion if it would have deprived the plaintiffs of double damages as allowed by California statute; the court found no abuse of discretion because under Texas conflicts rules the Texas courts would apply California law. (See also *Outboard Marine Corp.* v. *Superior Court* (1976) 59 Cal.App.3d 434, 441 [130 Cal.Rptr. 642] [no prejudice because Wyoming law applicable regardless of forum].)

In short, the California standard for consideration of a change in applicable law is much more liberal than that announced in *Piper.* The "suitability" of the alternative forum, encompassing such factors as differing conflict of law rules and "substantial disadvantage" from litigation in the alternative forum, must be considered. Furthermore, a foreign plaintiff's choice of forum is still afforded substantial deference in California. Thus, the opinion of the Third Circuit in *Piper* more closely represents the California law of forum non conveniens than that of the United States Supreme Court. The Supreme Court's opinion has created two distinctions between federal and California law. To the extent *Piper* departs from California law—i.e., on the two crucial points asserted by Syntex—it is inapposite.

III. *California Law Applied to the Present Case*

Having determined that the California law of forum non conveniens differs from federal law in two fundamental respects, we proceed to apply California law to the facts of the present case to determine whether the trial court abused its discretion in granting Syntex's motion.[3]

---

[3]Other similar contraceptive drug litigation has been pursued against other corporations in other jurisdictions in the United States; in all of these cases appellate courts either affirmed an order granting a forum non conveniens motion or reversed an order denying a forum non

Appellants' choice of forum should not have been disturbed unless the balance of relevant factors weighs strongly in favor of Syntex. (*Brown* v. *Clorox Co.*, *supra*, 56 Cal.App.3d at p. 311; *Great Northern Ry. Co.* v. *Superior Court, supra*, 12 Cal.App.3d at p. 110.) Accordingly, this court must review all factors relevant to the forum non conveniens inquiry. Of the 25 factors enumerated in *Great Northern Ry. Co.* v. *Superior Court, supra*, 12 Cal.App.3d 113-114 (see fn. 3, *ante*), many are not relevant to the present case (e.g., whether a view of premises by the trier of fact will or might be necessary or helpful.) Others overlap and may be consolidated for present purposes. Omitting the nonapplicable factors and consolidating the others, five pertinent factors emerge for analysis here: the availability of a suitable alternative forum (encompassing possible differences in conflict of law rules and any substantial disadvantage from a change of forum); the defendants' places of incorporation or principal places of business; the parties' relationships to California; whether litigation in California will place an unfair, inequitable or disproportionate burden on the courts of this state; and the relative convenience to the parties and witnesses.

A. *Availability of a Suitable Alternative Forum*

■ The question whether a suitable alternative forum is available encompasses at least two preliminary questions of availability: whether any statute of limitations precludes litigation in the proposed alternative forum, and whether the defendant is amenable to personal jurisdiction in the alternative forum. (*Great Northern Ry. Co.* v. *Superior Court, supra*, 12 Cal.App.3d at pp. 113-114.) ■ The trial court's imposition of conditions that Syntex submit to the jurisdiction of the British courts and waive any statute of limitations defenses avoids these problems. (See Morris, The Conflict of Laws (1971) pp. 58, 62; Miller & Lovell, Product Liability (1977) pp. 345-346.) Appellants suggest that British courts would not assert jurisdiction over an action arising from torts committed in California by American defendants, but British courts will assert civil jurisdiction over any occurrence, regardless of nationality or situs, if the parties agree to litigate in Britain. (Morris, The Conflict of Laws, *supra*, p. 45; James & Brown, General Principles of the Law of Torts (4th ed. 1978) p. 477.)

While the courts of Britain are available, however, a review of Britain's conflict of law rules and its current substantive law of products liability demonstrates that the British courts are not a *suitable* alternative.

conveniens motion. (*Dowling* v. *Richardson-Merrell, Inc.* (6th Cir. 1984) 727 F.2d 608; *Harrison* v. *Wyeth Laboratories* (E.D.Pa. 1980) 510 F.Supp. 1, affd. without published opinion (3d Cir. 1982) 676 F.2d 685; *Jones* v. *Searle Laboratories* (1982) 93 Ill.2d 366 [444 N.E.2d 157]; *Bewers* v. *American Home Products Corporation* (1984) 99 App.Div.2d 949 [472 N.Y.S.2d 637].) Because we follow California's own law of forum non conveniens in the present case, these decisions are of limited relevance here.

The British rule of conflicts is one of "double actionability:" an act committed in a foreign country is actionable as a tort in Great Britain only if it would be actionable under British law *and* under the law of the country where the act was committed. (Dicey & Morris, The Conflict of Laws (9th ed. 1973) p. 938; Miller & Lovell, Product Liability, *supra*, p. 352.)[4] Thus if the present case is litigated in Britain, appellants' remedies are limited by the extent to which British law affords relief.

One result of litigation in Britain, as acknowledged by Syntex, would be that appellants would lose any cause of action for strict liability. (E.g., Clark, *Strict Liability for Product Defects, The "Failure to Warn" issue* (Mar. 1983) J. Bus. L. 130.) While loss of a strict liability cause of action was held not to constitute a deprivation of "any" remedy in *Piper Aircraft Co. v. Reyno, supra,* 454 U.S. 254-255 [70 L.Ed.2d 434-435], we conclude that it would result in "substantial disadvantage" under California law.[5]

Syntex argues that the English law of negligence will still apply. Syntex asserted this argument below via a British solicitor's declaration that, despite the absence of strict products liability in British law, "there is a well developed doctrine of negligence liability in English law which would provide a perfectly good cause of action available against the manufacturer (or any supplier) of a product. This liability was made famous in the landmark case of *Donoghue* v. *Stevenson* (1932) A.C. 562. The manufacturer (or supplier) has a duty to take reasonable care to avoid causing injuries or damage to anyone he ought reasonably to have contemplated being affected by his acts."

In theory, the allegations in appellants' complaint, if proven, could result in recovery under the British law of negligence. "The general existence of a duty to warn that a product may have dangerous characteristics has long been recognized in English law." (Miller & Lovell, *op. cit. supra,* at pp. 229-230.) "[T]here may be negligence in marketing the product, exemplified by failure to warn of dangerous qualities. Many products, however carefully made, entail irreducible risks, like ethical drugs with harmful

---

[4]There is a generally recognized exception to the double actionability rule, that "a particular issue may be governed by the law of the country which, with respect to *that* issue, has the most significant relationship with the occurrence and the parties." (Morris, *op. cit. supra,* pp. 938, 945-948.) The exception, however, is of recent vintage, and has not yet been sufficiently developed to permit this court to speculate whether it might apply in the present case. (See Morris, *op. cit. supra,* at pp. 272-273.)

[5]While the scope of California strict products liability law as applied to injury resulting from prescription drugs is still in the process of development, it extends at least to a failure to warn of known dangers, as alleged here. (See *Finn* v. *G. D. Searle & Co.* (1984) 35 Cal.3d 691, 698-702 [200 Cal.Rptr. 870, 677 P.2d 1147].)

side effects . . . . [S]uitable warnings can either render them safe or at least give the user an informed choice whether to run the risk." (Fleming, The Law of Torts (6th ed. 1983) p. 466; see also Clark, *Strict Liability for Product Defects, The "Failure to Warn" Issue, supra,* J. Bus. L. 130, 132; *Strict Liability for Defective Products: A Changing Basis?* (1982) 33 No. Ir. L. Q. 229, 239, (hereafter cited as *Changing Basis*).) It is commonly said that in Britain the degree of responsibility expected of manufacturers is increased through operation of the procedural device of res ipsa loquitur. (Fleming, *op. cit. supra,* at pp. 178-179.)

But, in the law, theory and reality sometimes diverge. Such is apparently the case with the application of the British law of negligence to litigation involving defective products. In 1977 two government-created law reform commissions, the Law Commission and the Scottish Law Commission, concluded that "Existing rights and remedies in English and Scots law, in respect of injury caused by defective products, are inadequate . . . ." (The Law Commission and The Scottish Law Commission, Liability for Defective Products (Law Com. No. 82, Scot. Law Com. No. 45, June 1977) p. 37 (hereafter cited as Law Commission). Accord, e.g., Fleming, *op. cit. supra,* at p. 459 ["The need for reform has been bruited for a long time, stirred by the remarkable American judicial initiative of the last twenty-five years."]; Teff, *Products Liability in the Pharmaceutical Industry at Common Law* (1974) 20 McGill L.J. 102, 105 (hereafter cited as *Pharmaceutical Industry*) [referring to present British law as "a system out of touch with reasonable consumer demands and the economics of modern marketing methods"]; Plummer, *Products Liability in Britain* (1980) 9 Anglo-Am. L.Rev. 65, 69 (hereafter cited as *Products Liability in Britain*) ["Realistically . . . compared with consumer protection available now in the United States, English courts have given protection to consumers in a very limited number of situations."].)

A product-injured plaintiff who wishes to sue for negligence in Britain is "at a disadvantage in relation to access to the relevant evidence and scientific expertise, and this may be a real barrier to the initiation of an action on his part." (Law Commission, *supra,* at p. 9.) One law review commentator states, "The product-injured plaintiff has always had imposing obstacles confronting him when attempting to prove specific negligence against a manufacturer—even in the days when marketing methods were simple. The scope and complexity of modern markets complicate and multiply his problems." (*Products Liability in Britain, supra,* at p. 79.) Another commentator characterizes pharmaceutical negligence actions as "prohibitively costly and unendurably lengthy."(*Pharmaceutical Industry, supra,* at p. 120.)

To demonstrate the inadequacy of existing English law in the field of prescription drugs, many authorities cite the example of litigation in Britain involving the severely deformed children of women who took the drug thalidomide. This litigation spanned two decades and resulted in relatively modest recoveries for plaintiffs with very severe deformities. (Law Commission, *supra,* at p. 21; *Products Liability in Britain, supra,* at pp. 77-80; *Pharmaceutical Industry, supra,* at pp. 116-118.)

Even the doctrine of res ipsa loquitur, in practice, is said to be commonly denied to plaintiffs in products liability cases. (*Products Liability in Britain, supra,* at p. 70; *Pharmaceutical Industry, supra,* at p. 107.) And one commentator adds that even if res ipsa loquitor were applied consistently, "it would not remove a most serious impediment to an acceptable solution of any technically complex case in which negligence was in issue, namely, the ability of a powerful defendant to compel settlement on terms unfavorable to a plaintiff who cannot take risks or endure the delay which *any* investigation of that issue might involve." (*Pharmaceutical Industry, supra,* at p. 108, italics in original.)

Widespread recognition of these problems has led to proposals for a system of strict liability in Britain. In 1977 the Law Commission and the Scottish Law Commission recommended adoption of strict liability, including strict liability for damage caused by pharmaceuticals and liability for failure to warn. (Law Commission, *supra,* at pp. 19-21, 37-39.) Another commission, established by Parliament to study civil liability and compensation for personal injury, made similar recommendations in 1978. (See *Products Liability in Britain, supra,* at pp. 67, 87-91.) Several commentators have specifically urged application of strict liability to prescription drugs. (*Products Liability in Britain, supra,* at p. 80; *Pharmaceutical Industry, supra,* at pp. 122-123; Tobin, *Products Liability: A United States Commonwealth Comparative Survey* (1969) 3 N. Z. L.Rev. 377, 401-402.)

Recent publications agree that adoption of a statutory scheme of strict liability in Britain is now inevitable. As of March 1983 the British government had accepted in principle the provisions of a 1979 draft European Economic Community directive calling for a system of strict products liability, though the government indicated that no such legislation would be introduced during the life of the present Parliament. (Clark, *Strict Liability for Product Defects, The "Failure to Warn" Issue, supra,* J. Bus. Law 130; *Changing Basis, supra,* at p. 229 [as of 1982 strict liability "is likely to be introduced into United Kingdom law shortly"]; *Products Liability in Britain, supra,* at p. 91 [as of 1980, system of strict liability likely to be adopted "within five years"]; see Fleming, *op. cit. supra,* at p. 459 ["While our

own courts have been unequal to that task [of reform], legislation is at last afoot."].)

Justice Cardozo once observed, "We are not so provincial as to say that every solution of a problem is wrong because we deal with it otherwise at home." (*Loucks* v. *Standard Oil Co. of New York* (1918) 224 N.Y. 99 [120 N.E. 198, 201].) But if the present litigation occurs in Britain, appellants will not simply lose their cause of action for strict liability, they will be forced to litigate under a system of negligence law that the British themselves have condemned as inadequate in the field of defective products. The resulting disadvantage to appellants is a factor that constitutes denial of a "suitable" alternative forum under California law (though not, as required under federal law, a denial of "any" remedy under *Piper*) and weighs heavily against a forum non conveniens dismissal. Recognition of this problem is not provincialism, but plain common sense.[6]

### B. *Defendants' Principal Places of Business*

■ Another factor to be considered, in the case of a corporate defendant, is the corporation's place of incorporation or principal place of business: if either is in California, this factor weighs against a forum non conveniens dismissal. (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at p. 580; *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at p. 311.) Of the three corporate defendants here, two are alleged to maintain their principal places of business in Palo Alto; the third maintains offices in Palo Alto. This point thus weighs against dismissal. It is not unfair to require corporate defendants to defend litigation against them in the county where they have their principal place of business, for torts alleged to have been committed there.

### C. *The Parties' Relationship to California*

■ A forum non conveniens dismissal may be inappropriate if "the parties participating in the action have a relationship to this state which imposes upon them an obligation to participate in judicial proceedings in the courts of this state." (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 114.) Appellants contend that the trial court erred when it accepted Syntex's contentions that the British affiliate had sole responsi-

---

[6]Appellants also argue that trial in Britain would result in a loss of rights to discovery, to punitive damages and to a jury trial. Additionally, they argue contingent fee representation would be unavailable to appellants and, if unsuccessful, they may be liable for the attorney fees of the defense. Because we reverse the trial court for the reasons stated in this opinion we find it unnecessary to determine whether these factors, singly or in combination, constitute a substantial disadvantage of such a character as to deprive appellant of a suitable alternative forum and thus transcend the provincialism condemned by Justice Cardozo.

bility for the "compounding, promotion, marketing and distribution of Norinyl in England" and that Syntex had thus done nothing in California meriting litigation here. Syntex argues that the bare allegations in appellants' complaint could not create the necessary connection between this litigation and California.

■ "A trial judge must consider and review all the declarations, papers and data which are submitted in connection with the motion to get an intelligent overview of the entire action and to develop an insight into the relationship between the parties before a determination of forum non conveniens can be made. . . . If a court were required to accept any allegation made by a plaintiff as true, the likelihood of the motion based on forum non conveniens being granted in that case would be substantially reduced." (*Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d at p. 587.)

■ Syntex presented affidavits stating that the Norinyl ingested by appellants was produced by the British affiliate, and that the British affiliate and its English licensees were responsible for clinical investigations and trials, marketing applications, manufacture, packaging, quality control, advertising and promotion, sales, postmarketing safety studies, and collection and dissemination of information regarding Norinyl. But appellants, who allege the defendant's commission of the tort for which they claim damages occurred in California, countered with Syntex's statement in an interrogatory answer that the three defendants had performed "[a]ll premarketing research for Norinyl," "[a]ll premarketing chemical studies for Norinyl," "[a]ll premarketing animal studies for Norinyl," and "[a]ll premarketing clinical trials for Norinyl." This answer tended to support the allegation in appellants' complaint that Syntex, through conduct in California, had "caused and allowed" Norinyl to be distributed and marketed in the United Kingdom. The answer suggested a connection between Syntex and California which imposes upon them an obligation to participate in judicial proceedings here. It may be that the British affiliate had a closer connection to the marketing of the product in Britain, making it a more appropriate defendant, but there is no "defendant non conveniens" doctrine in California.

This is not to say that appellants have as a matter of law established the commission of acts in California, but simply that they presented the trial court with enough facts to weigh in favor of the requisite connection with this state and against dismissal. (See generally *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at pp. 311-312.)

D. *The Burden on California Courts*

An important concern voiced by the court below was that the Santa Clara County Superior Court was overburdened and the recent victim of a budget

crisis. At oral argument on appeal, counsel for appellants argued that California should not become a "haven for marauding tortfeasors." Counsel for Syntex responded that California should not create a "tortfeasors' Ellis Island."

■ The financial burden on the court and administrative difficulties are legitimate concerns in a forum non conveniens inquiry (*Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 114), and we sympathize with the trial court's concerns here. The proper inquiry, however, is not simply whether the court is overburdened, but whether the action would impose a burden "which is unfair, inequitable or disproportionate in view of the relationship of the parties or of the cause of action to this state." *(Id.,* at pp. 113-114.) "Every lawsuit tried places a burden upon the courts, but at least one of the functions of courts is to try lawsuits." *(Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at p. 313.)

Appellants made a sufficient showing of a connection between California and the present litigation to justify the burden that would be imposed on California courts. This state has an interest in regulating the foreign marketing of defective products alleged to have been developed in California. (See generally *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 114.) In the words of *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d at page 313, in which a child ingested drain cleaner manufactured in California and sold in the State of Washington, "the relationship of the respondents to this state, and the activities of those respondents in the manufacturing, processing, packaging, labeling, distributing and selling of products in this state and sending those products from this state to other states, does not lead to a conclusion that prosecution of this action in this state would 'place a burden on the courts of this state which is unfair, inequitable or disproportionate.' " ■ There can be no unfair burden on California courts to litigate tort actions against corporations with their principal place of business in California when plaintiffs can allege and attempt to prove the tort occurred in California.

### E. *Relative Convenience to the Parties and Witnesses*

■ The last factor for consideration encompasses the relative convenience to the parties and witnesses of trial in the alternative forum and the location of sources of proof. (E.g., *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at pp. 313-314.) As the court below noted, the plaintiffs, the doctors who disseminated the drugs, and the bulk of the evidence as to damages are all located in the United Kingdom. Appellant contends the bulk of the evidence as to liability is located in California. Clearly, from appellants' point of view, litigation in the United Kingdom

would be more convenient. But appellants, for tactical reasons, have elected to shoulder the burden of litigating abroad. It is difficult to imagine why, from the defendants' point of view, litigation in the United Kingdom would be more convenient. Furthermore, evidence of policymaking by defendants with regard to the foreign marketing of Norinyl may be present in California.

A similar situation was presented in *Brown* v. *Clorox Co., supra,* 56 Cal.App.3d 306, 312, in which two of the corporate defendants sued by a Washington State plaintiff were incorporated and maintained principal places of business in California. The court noted, "If there is any disadvantage or additional expense in bringing these witnesses to California, plaintiff appears to be willing to shoulder this burden. We see no cause for respondents to complain on this score." (*Ibid.*) This holding in *Clorox* was restated as follows in *Hemmelgarn* v. *Boeing Co., supra,* 106 Cal.App.3d 576, 580: "Even where the plaintiff is out of state, but willing to shoulder the burden of inconvenience and additional expense of litigation in California, the motion to dismiss should be denied if plaintiff claims defendants are companies incorporated in California, maintain their principal place of business here, and conduct themselves here so as to cause injuries to others in another state." The trial court possesses the ability under our discovery statutes to assure that appellants' choice of litigation in California does not cause the burden or cost of discovery to fall unfairly upon the defendants.

Given appellants' willingness to litigate in a state in which two of the three defendants allegedly maintain principal places of business and the third maintains offices, the convenience from litigation in the United Kingdom is of limited significance for purposes of weighing against litigation in California.

## IV. *Conclusion*

We conclude that the trial court abused its discretion when it granted Syntex's forum non conveniens motion and dismissed the action. ■ An order granting such a motion will not be overturned on appeal unless the balance of factors weighs strongly against the moving party (see *Jagger* v. *Superior Court, supra,* 96 Cal.App.3d at pp. 579, 584), but in the present case we hold that the balance of factors weighed very strongly against dismissal. With regard to the suitability of the proposed alternative forum—a point of fundamental importance—the British themselves generally agree that their existing law of products liability is as a practical matter inadequate and requires major reform. Two of the three defendants are alleged to maintain their principal places of business in California; the third maintains offices here. Appellants presented the trial court with facts suggesting a con-

nection between the litigation and California. The burden imposed on the trial court, while substantial, would not be unfair, inequitable or disproportionate in view of the defendants' relationship to and alleged conduct in this state and the state's interest in regulating the foreign marketing of defective products developed here. While we are sensitive to concerns of creating or adding to trial court backlogs, California courts have a responsibility to provide a forum for litigation against corporations utilizing this state as their principal place of business for torts committed in California. Appellants' willingness to shoulder the burden of litigating abroad mitigates the significance of any inconvenience from litigation in California. To the extent that other factors pertinent to a forum non conveniens inquiry are neutral or irrelevant here, Syntex's case for dismissal is further weakened.

The balance of factors was not only insufficient to overcome the degree of deference due the plaintiffs' choice of forum, it weighed strongly *against* dismissal. The effect of dismissal was to "impede the ends of substantial justice." (See *Great Northern Ry. Co.* v. *Superior Court, supra,* 12 Cal.App.3d at p. 110.) We hold that the trial court abused its discretion in disturbing appellants' choice of forum because California's law of forum non conveniens precludes granting the motion unless the balance of relevant factors weighs strongly in favor of the moving party. As discussed above, the balance of relevant factors could not be found to weigh strongly in favor of Syntex.

The order of dismissal is reversed.

Haning, J., concurred.

**LOW, P. J.**—I concur in the decision to reverse and in the scholarly analysis of my colleagues. The trial court granted the inconvenient forum motion and conditionally dismissed the action without adequately considering all the factors that guide an equitable exercise of its discretion. Undue emphasis was given to the burdens heaped upon the Superior Court of Santa Clara County.

However, I believe the appropriate disposition would be to remand the motion to the trial court. The court should reconsider in light of our analysis, giving proper evaluation and weight to all the factors. The trial court should also receive further evidence (Evid. Code, § 311) to assess whether British laws adequately protect plaintiffs and determine if Britain's legal system offers a suitable alternative forum. The record does not contain sufficient information whether the British remedies are deficient, if its procedures ineffective, or if the potentials for a just recovery so impotent as to conclude, as a matter of law, that substantial justice and fundamental fair-

ness require continued proceedings in this state despite the higher litigation cost and the likelihood of inconvenience to both sides.

In the exercise of its sound discretion, the trial court needs to determine, among other things, if the current British remedies of negligence supported by a "liberal rule of res ipsa loquitur" in actual application would provide an appropriate alternative. The trial court should also be given the opportunity to briefly defer its ruling and fashion other conditions for limited (in time and scope) discovery to partly resolve the question of the California defendants' participation in the development, production or marketing of Norinyl. Opposing affidavits would permit a more accurate assessment of California's public interest, if any, in retaining or transferring this action.

A petition for a rehearing was denied June 22, 1984, and the opinion was modified to read as printed. Low, P. J., was of the opinion that the petition should be granted. Respondents' petition for a hearing by the Supreme Court was denied August 22, 1984.